UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:09-cr-87 |
| | ) | COLLIER/CARTER |
| CHARLES GREEN, *also known as Boog*, and | ) | |
| JAMES CALVIN GREEN, *also known as* | ) | |
| *Skinny Pimp*. | ) | |

REPORT AND RECOMMENDATION

I. Introduction

  Defendant Charles Green's Motion to Suppress Evidence [Doc. 47] and his Motion for a *Franks* hearing [Docs. 63] are before the undersigned Magistrate Judge having been referred by the District Court for a Report and Recommendation pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C). Defendant Charles Green (also referred to herein as Defendant), who is facing several federal drug charges and a firearms charge, seeks to suppress evidence found at a residence and on his person following the execution of a search warrant. In support of his motion, Charles Green argues 1) the affidavit used to obtain the search warrant for the residence and for the defendant himself does not, on its face, support probable cause, and 2) in the alternative, if the affidavit is sufficient on its face, the search was still unconstitutional because the affiant omitted material facts from the affidavit which would negate probable cause, and 3) the warrant was obtained in violation of Fed. R. Crim. P. 41.

  Because the affidavit on its face supports probable cause to issue the search warrant and because defendant Charles Green has not made a substantial showing that the affiant omitted critical facts from the affidavit with an intention to mislead, it is RECOMMENDED Charles

1

Green's motion to suppress evidence on the ground that the Affidavit lacks probable cause and his motion for a *Franks* hearing to consider allegedly omitted evidence be DENIED. That portion of defendant's motion seeking suppression of evidence on the basis of a violation of Fed. R. Crim. P. 41 is RESERVED. The undersigned will set a hearing on the Rule 41 matter and thereafter issue a report and recommendation.

## II. Relevant Facts

On December 29, 2008, Det. Chad Johnson of the Marion County, Tennessee, Sheriff's Department executed a search warrant for 1210 South Cedar Road in South Pittsburg, Tennessee. Law enforcement recovered numerous rounds of ammunition, eleven grams of marijuana, a set of electronic scales, and $1,800 in cash from Charles Green himself. Det. Johnson prepared and signed the affidavit used to obtain the search warrant on December 29, 2009 (the Affidavit), and a Marion County General Sessions Judge issued the search warrant on the same day.

In the Affidavit, Det. Johnson makes the following averments:

Det. Johnson of the Marion County Sheriff's Department is assigned to the Bureau of Alcohol, Tobacco, Firearms, and Explosives Task Force (ATF) in Chattanooga, Tennessee. He is also a member if the Southeast Tennessee Methamphetamine Task Force (Task Force). (Det. Johnson's Affidavit ¶ 1).[1]

On April 1, 2008, agents conducted a "controlled purchase" with a confidential source. Agents searched the confidential source and his car and gave the confidential source a recording

---

[1]Det. Johnson's affidavit is cited herein after as "Affidavit ¶ __). The paragraphs in the Affidavit are not explicitly numbered; however, the defendant wrote numbers by the paragraphs in the Affidavit he filed as an exhibit to his motion. *See* Doc. 53. References to paragraphs in the Affidavit are made following the numbering by the defendant.

2

device and $100.00. While being followed by agents, the confidential source left the "briefing location," traveled to Hemlock Street, and picked up Bubba Sudds. Agents followed the confidential source and Bubba to "one of [Charles] GREEN's residences" located at 803 Hamburg Road in South Pittsburg. Det. Johnson saw the confidential source park in the driveway and a black male lean into the car window to converse with the confidential source. The confidential source then left the residence. Agents followed the confidential source back to Hemlock Street where Bubba Sudds exited the car. Agents followed the confidential source to a briefing location where the confidential source surrendered one gram of suspected crack cocaine purchased from Charles Green. Agents then searched the confidential source and his/her car for contraband and found none. The confidential source told agents that the black male who leaned inside the car was Charles Green. The confidential source has provided drug information in the past which has been independently corroborated by Det. Johnson and known by him to be accurate. (Affidavit ¶ ¶ 6-7).

On November 1, 2008, Betty Jo McFarland told Det. Johnson she has made over 100 purchases of crack cocaine from Charles Green. She also said some of these purchases have taken place at his residence and at various locations throughout Marion County, Tennessee. (Affidavit ¶ 8).

On December 5, 2008, agents followed a confidential source, whom agents had provided with a recording device and $220.00, to Hemlock Street in South Pittsburg, Tennessee. At Hemlock Street the confidential source met and had a conversation with Timothy Hutchins who told the confidential source he (Hutchins) could go to Charles Green's house and purchase crack cocaine for the confidential source. The confidential source phoned Det. Johnson who advised

him to go ahead with the transaction. Det. Johnson followed the confidential source and Hutchins to an alley behind Charles Green's residence. (The affidavit does not provide the address for this residence.) Det. Johnson saw Hutchins go inside Charles Green's residence through the back door, later exit through the back door, and then enter the confidential source's car. Det. Johnson followed the confidential source and Hutchins to Hemlock Street where Hutchins exited the car. Det. Johnson then followed the confidential source to the secure location where the confidential source gave him one gram of suspected crack cocaine. This confidential source has provided drug information in the past which has been independently corroborated by Det. Johnson and known by him to be accurate. (Affidavit ¶ ¶ 9-10).

On December 5, 2008, while acting under cover, Det. Johnson purchased hydrocodone tablets from Timothy Hutchins. Hutchins was then arrested, and Det. Johnson identified himself to Hutchins. Hutchins told Det. Johnson that he had traveled to Charles Green's residence earlier that day and had bought crack cocaine from Charles Green for $220.00 which he provided to the confidential source. (Affidavit ¶ 11).

On December 16, 2008, agents and Det. Johnson met a confidential source at a briefing location. Agents searched the confidential source and his/her vehicle for contraband and found none. They gave the confidential source a recording device and $100.00. Agents followed the confidential source to the residence of Calvin Green, Charles Green's brother, located in Jasper, Tennessee and observed Calvin Green enter the confidential source's vehicle and travel to South Pittsburg, Tennessee. In route, agents saw the confidential source and Calvin Green stop at an Exxon gas station in Jasper so Calvin Green could purchase a beer. Agents then followed the confidential source and Calvin Green to Charles Green's residence at 1210 South Cedar Avenue

in South Pittsburg, Tennessee. Agents saw Calvin Green exit the vehicle and enter the back door of Charles Green's residence. Agents later saw Calvin Green exit the residence and enter the confidential source's vehicle. Agents followed the confidential source and Calvin Green back to Calvin Green's residence in Jasper and observed Calvin Green exit the confidential source's car. Agents then followed the confidential source back to the secure meeting location where the confidential source surrendered one gram of suspected crack cocaine. According to the confidential source, he gave the $100.00 to Calvin Green who went inside the residence and purchased the crack cocaine from Charles Green. Agents searched the confidential source and his car for contraband and found nothing. This confidential source has provided drug information in the past which has been independently corroborated by Det. Johnson and known by him to be accurate. (Affidavit ¶ ¶ 12-13).

On December 23, 2008, Det. Johnson met with a confidential source in a secure location in Jasper, Tennessee. Agents searched the confidential source and his vehicle for contraband and found none. The confidential source was given a recording device and $100 in official funds bearing a serial number. Agents followed the confidential source to Calvin Green's residence in Jasper. Agents saw Calvin Green enter the confidential source's car and travel toward South Pittsburg. After agents observed the confidential source and Calvin Green stop at the Conoco gas station in Jasper so that Calvin Green could purchase beer, the agents followed the confidential source and Calvin Green to Charles Green's residence at 1210 South Cedar Avenue in South Pittsburg. Agents saw the confidential source drive into the alley behind Charles Green's residence. Later, agents saw Calvin Green exit the residence and re-enter the confidential source's vehicle. Agents then observed Calvin Green and the confidential source

5

drive back to Calvin Green's residence in Japser where Calvin Green exited the vehicle. Agents followed the confidential source to the designated meeting place where he/she gave the agents one gram of suspected crack cocaine. The agents searched the confidential source and his/her vehicle with negative results. The confidential source told Agent Johnson he/she gave Calvin Green the $100 in official funds and Calvin Green went into Charles Green's residence and purchased the suspected crack cocaine. This confidential source has provided drug information in the past which has been independently corroborated by Det. Johnson and known by him to be accurate. (Affidavit ¶ ¶ 14-15).

Charles Green has at least three prior felony convictions for the distribution of crack cocaine in the Circuit Court of Marion County, Tennessee and one federal felony conviction on a firearms charge. (Affidavit ¶ 17).

### III. Analysis

*A. The Affidavit Supports Probable Cause*

Charles Green argues the Affidavit used to obtain the search warrant for 1210 South Cedar Road and for his person is "overly broad" because it does not, on its face, supply the necessary probable cause to issue the search warrant. The undersigned finds the Affidavit sufficient.

The Fourth Amendment of the United States Constitution provides that "no Warrants shall issue, but upon probable cause." "Probable cause for the issuance of a search warrant is defined in terms of whether the affidavit sets out facts and circumstances which indicate a 'fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. Finch*, 998 F.2d 349-352 (6th Cir. 1993) (quoting *United States v. Bowling*, 900

F.2d 926, 930 (6th Cir. 1990); *see also United States v. Couch*, 367 F.3d 557, 560 (6th Cir. 2004) ("To justify a search, the circumstances must indicate why evidence of illegal activity will be found in a particular place.") (internal citations omitted). Thus, "the affidavit must establish a 'nexus between the place to be searched and the evidence to be sought.'" *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (citing *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir.2004) (en banc)).

A magistrate's probable cause determination should be made in a "realistic and common sense fashion," *Finch*, 998 F.2d at 351, and is entitled to "great deference." *Couch*, 367 F.3d at 557. "[T]he task of the reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984). Factors to consider when reviewing a search warrant affidavit for probable cause to search include: 1) the basis of an informant's knowledge, 2) the reliability of the informant, and 3) the corroborative evidence presented by the government. *United States v. Shamaeizadeh*, 80 F.3d 1131, 1137 (6th Cir. 1996). There is no rigid formula for the application of these factors, however. Rather, the court is to consider each of them in light of the strengths or weaknesses of the other factors and circumstances present in the case. *Id.*

Another factor to consider is the timeliness of information obtained about the place to be searched. Is the information fresh or stale? As explained in *Brooks*, 594 F.3d at 493,

> Whether information is stale in the context of a search warrant turns on several factors, such as "the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), [and] the place to be searched (mere criminal forum of convenience or secure

7

operational base?).” *United States v. Hammond*, 351 F.3d 765, 771-72 (6th Cir.2003) (quoting *United States v. Greene*, 250 F.3d 471, 480-81 (6th Cir.2001)).

In sum, probable cause is incapable of precise definition or quantification. It exists when, based on the totality of the circumstances, there is a fair probability that the fruits of a criminal activity will be located within the premises to be searched. *Couch*, 367 F.3d at 560; *United States v. Rodriguez-Sauzo*, 346 F.3d 637, 644 (6th Cir. 2003).

In his affidavit, Det. Johnson relies heavily on information provided by one or more informants. It is unclear whether the informants are the same or different ones throughout the affidavit. The basis for the informant's knowledge is personal involvement in making purchases of crack cocaine from the defendant. *See United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000) (en banc) (information from "direct personal observation of criminal activity" bears an indicia of reliability). The informant(s) involved in the controlled purchases have all provided information regarding drug trafficking which Det. Johnson has determined to be accurate. *Allen*, 211 F.3d 975-6 (that informant has provided reliable information in the past about drug activity is an indicia of the informant's reliability). At least one informant is identified by name and made statements against penal interests, also an indicia of reliability. *See United States v. Higgins*, 557 F.3d 381, 389-90 (6th Cir. 2009) (holding statement against penal interest established reliability of informant). There is also good corroboration of the informant's information from the controlled purchases: the informant wore a recording device and was under surveillance before, during, and after the purchases. *See e.g. United States v. Jackson*, 470 F.3d 299, 307-08 (6th Cir. 2006) (use of controlled purchases corroborates information from confidential source). Thus, as to the information provided, its reliability and credibility are fairly high.

Defendant also challenges the nexus between the place to be searched and the evidence sought. Defendant is correct that the Affidavit presents no basis, other than Det. Johnson's conclusory statement, to determine that 1210 South Cedar Road is the defendant's residence. Nevertheless, the Affidavit adequately addresses the nexus issue by providing sufficient information from which one can conclude that defendant was involved in a steady, continuous crack distribution scheme which was using 1210 South Cedar Road as the point of sale within the two weeks prior to the search warrant being issued.

Over a period of at least eight months prior to the execution of the search warrant at issue, defendant sold crack cocaine on four separate occasions. At some unidentified point in time, before the search warrant was issued, defendant sold crack cocaine to one informant at least one hundred times. Defendant also has three prior felony convictions for selling crack cocaine. Further, and importantly, in the two weeks before the search warrant was obtained, the defendant used the residence at 1210 South Cedar Lane to sell crack cocaine twice. When considering all the information in the affidavit as a whole, I conclude there existed a fair probability that defendant would use 1210 South Cedar Road to sell crack cocaine on an ongoing basis and that, therefore, there existed a fair probability that evidence of drug trafficking would be found at this address.

Finally, as to the defendant himself, as previously illustrated, the affidavit provides ample probable cause to believe that defendant was involved in an ongoing crack cocaine business and that evidence of such dealings would be found on his person. Therefore, I conclude the search warrant was properly issued as to the defendant himself.

*B. The Defendant Is Not Entitled to a Franks Hearing*

The defendant argues that Det. Johnson made a number of omissions in his affidavit which, had they been included, would "weaken or negate probable cause" in the Affidavit, and he requests a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). The purpose of a *Franks* hearing, generally, is to allow the defendant to challenge the truthfulness of statements in an affidavit in order to challenge the legality of a search warrant issued on the basis of the affidavit. *Id*. An officer's affidavit is entitled to a presumption of validity, *id.* at 171; however, "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Id.* at 155-56.

"A *Franks* hearing may be merited when facts have been omitted in a warrant application, but only in rare instances." *Mays v. City of Dayton,* 134 F.3d 809, 815 (6th Cir. 1998), *accord, Spencer v. Sutterfield*, 2003 WL 21259696 **5 (6th Cir. May 28, 2003) (per curiam). A police officer is not required to include every piece of information gathered during the course of an investigation nor must police include all "information potentially contradicting a finding of probable cause." *Mays*, 134 F.3d at 815. The rationale of *Brady v. Maryland*, 373 U.S. 83 (1996), which requires disclosure to the defendant of all exculpatory evidence bearing upon guilt or innocence, does not apply to the warrant process. *Mays*, 134 F.3d at 815. Obtaining a search warrant and trying defendant on the ultimate question of guilt or innocence differ in at least two important respects: First, the warrant application process results in no ultimate finding of guilt or innocence and thus its consequences of arrest are less severe than the consequences of an adverse

10

criminal verdict. *Mays*, 134 F.3d at 815. Second, search warrant affidavits are prepared by non-lawyers "in the heat of a criminal investigation [and] should not be burdened with the same duty to assess and disclose information as a prosecutor who possesses a mature knowledge of the entire case and is not subject to the time pressures inherent in the warrant application process." *Mays* 134 F.3d at 816. Thus, the fact that certain information in a search warrant is ultimately proven to be inaccurate does not merit a *Franks* hearing. *Mays*, 134 F.3d at 815. In sum, a *Franks* hearing is merited only "in the *very* rare case where the defendant makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause." *Mays* 134 F.3d at 816 (emphasis original), *accord Spencer*, 2003 WL 21259696 at *5.

In the instant case, the defendant has referred to numerous alleged omissions, but the defendant does not clearly explain their significance to the warrant application process; they are just listed. These omissions appear to be more exacting details of the investigation itself and arguably bear on the question of whether the government will be able to prove guilt beyond a reasonable doubt. I see no omission critical to the warrant application process. The most important omission is the one in defendant's brief. Defendant makes no preliminary showing that any of the so called omissions in Det. Johnson's Affidavit were made *with the intention of misleading*. Absent such a showing, a *Franks* hearing is not warranted and the analysis can go no further.

*C. Federal Rule Criminal Procedure 41*

Defendant argues that Det. Johnson is a federal agent and his failure to follow Fed. R. Crim. P. 41 by obtaining a search warrant from a federal judicial official as opposed to a state

judicial official renders the warrant and, subsequently, the search invalid. The government cites *United States v. Marshall*, 192 Fed. Appx. 504 (6th Cir. Aug. 22, 2006) for the blanket proposition that a state police officer assigned to a federal task force who filed his affidavit for a search warrant in his capacity as a state officer was not a federal agent for purposes of Rule 41. (*See* Government's response brief at 2, Doc. 54). *Marshall* does not, however, stand for such a concrete position. In *Marshall*, Kentucky State Police Detective Rodger Cooper, who had also been deputized by the FBI and the federal DEA agency, was in a store shopping when a he spotted one of the defendants buying pseudoephedrine, a precursor to methamphetamine. The officer followed the defendant to two other stores where he saw the defendant and co-defendant purchase more boxes of pseudoephedrine. Det. Cooper called the local police for assistance. Local police eventually stopped the defendants on a traffic violation. A search of their vehicle revealed a number of incriminating items. After some further investigation with the assistance of local and state officers, Det. Cooper prepared an affidavit and submitted an application for a search warrant to a state judicial official for one of the defendant's residences.

Thereafter, the *Marshall* defendants moved to suppress all evidence found at this residence on the ground that the warrant did not comply with Fed. R. Crim. P. 41 which requires the search warrant to be issued by a federal magistrate judge unless one is not reasonably available, in which instance a judge of a state court of record can issue the warrant. The *Marshall* defendants argued Rule 41 applied to this warrant because Det. Cooper had been deputized by a federal law enforcement agency. The Sixth Circuit did not find the argument persuasive noting that Cooper was off-duty when he spotted the defendants engaging in suspicious behavior and no federal agents were involved in the subsequent investigation. Based

on these facts, the Court concluded Cooper was acting solely in his capacity as a state officer when he applied for the search warrant; thus, Rule 41 did not apply. *Id*. at 511-12. *See also United States v. Shields*, 978 F.2d 943, 946 (6th Cir. 1992) ("Rule 41 does not apply in a case where no federal officers are involved."); *United States v. Buis*, __F.Supp.2d__, 2009 WL 2043879 *7 (E.D. Tenn. July 2, 2009) (Rule 41 does not apply where no federal agents were involved in executing the search warrant).

On the other hand, where federal agents have had significant involvement in an investigation leading to a search warrant, the Sixth Circuit has held Rule 41 does apply to the warrant application process. *See United States v. Searp,* 586 F.2d 117 (6th Cir. 1978). *See also United States v. Hunter,* 4 Fed.Appx. 295, 301 (6th Cir. 2001) ("Mere federal involvement is not enough; there must be significant involvement prior to the search.").

*Searp* involved a joint federal and state investigation of several bank robberies. A federal agent obtained the search warrant in question, several federal agents participated in the search, and one federal agent directed the search. In light of these facts, the Sixth Circuit concluded "[t]his was a federal search for evidence of a federal crime conducted by federal officers," *id* at 1121, and therefore Rule 41 did apply. *Id.* at 1121-22.

According to Det. Johnson's affidavit, he is a detective with the Marion County Sheriff's Department and is assigned to the federal ATF and the Southeast Tennessee Methamphetamine Task Force. (Affidavit ¶ 1). Det. Johnson further states that since April 1, 2008 he has been conducting an investigation with regard to alleged violations of various state and federal narcotics laws. (Affidavit ¶ 5). While this information alone would not be sufficient to raise an inference concerning federal involvement in this case, defendant has submitted some exhibits

obtained from the government which appear to indicate a more significant involvement on the part of federal agents, including the possibility that Det. Johnson was acting in his capacity as a deputized federal Task Force officer when he conducted the investigation into this case, obtained the search warrant, and executed the search warrant. Defendant has submitted two investigative reports prepared by Det. Johnson. (*See* Exhibits A8 and A11 attached to Supplement to Defendant's Motion to Suppress, Doc. 63). The reports are prepared on forms with the following heading at the top: "U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives." The reports refer to Det. Johnson as "ATF TFO [Task Force Officer] Chad Johnson" and are signed by two other Task Force officers. One report concerns Johnson's interview of Betty Jo McFarland (Ex. A8) and the other report concerns the April 1, 2008 controlled buy from Charles Green using the confidential informant (Ex. A11). The undersigned concludes this information is sufficient to merit an evidentiary hearing to determine the degree of federal involvement in the search warrant at issue.

The undersigned cautions that even if it is ultimately determined Rule 41 does apply to the search warrant at issue, it does not necessarily follow that exclusion of evidence will be the proper remedy for any failures to comply with Rule 41. The suppression of evidence for violations of Rule 41 is not appropriate unless "(1) there was 'prejudice' in the sense that the search would not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." *Searp*, 585 F.2d at 1125; *accord*, *United States v. Dirr*, 2009 WL 5892996 (E.D. Tenn. Aug. 28, 2009) (Shirley, M.J.). The undersigned will set an evidentiary hearing on this issue.

## IV. Conclusion

Because the Affidavit provides probable cause to search 1210 South Cedar Road and the defendant and because the defendant has made no preliminary showing that Det. Johnson, the affiant, omitted critical information from the Affidavit with the intent to mislead, it is RECOMMENDED that defendant's motion to suppress for lack of probable cause and for a *Franks* hearing be DENIED. That portion of defendant's motion which seeks suppression of evidence on the basis of a violation of Fed. R. Crim. P. 41 is RESERVED pending an evidentiary hearing to be set forthwith.[2]

Dated: March 26, 2010        *s/William B. Mitchell Carter*
                              UNITED STATES MAGISTRATE JUDGE

---

[2]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).