UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | 1:09-cr-87 |
| ) | COLLIER/CARTER |
| CHARLES GREEN, *also known as Boog*, ) | |

REPORT AND RECOMMENDATION

I. Introduction

Charles Green's Motion to Suppress (Doc. 47) and Amended Motion to Suppress (Doc. 73) are pending. The first issue before the undersigned is whether the exclusionary rule should apply to evidence found at defendant's residence because law enforcement failed to comply with Fed. R. Crim. P. 41 when obtaining the search warrant. I conclude it does not because the search warrant would have been issued regardless of compliance with Rule 41, and the failure to follow Rule 41 was not an intentional effort to avoid its requirements.

The second and more difficult issue before the undersigned is whether law enforcement violated the Fourth Amendment by executing a search warrant at a house used in an ongoing drug trafficking business after law enforcement received information that there would be no drugs in the house on that particular day. Because the house was used in ongoing drug trafficking and law enforcement received additional information that more drugs would be coming into the house later and because the warrant covered more than just drugs, I conclude law enforcement did not violate the Fourth Amendment by executing the warrant. Therefore, it is

1

RECOMMENDED defendant's Motion to Suppress (Doc. 47) and Defendant's Amended Motion to Suppress (Doc. 73) be DENIED.

## II. Relevant Facts

*A. Procedural Background*

Defendant Charles Green filed a motion to suppress evidence (Doc. 47) obtained when a search warrant for his residence was executed on December 31, 2008. This motion was referred to the undersigned by the District Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). The undersigned issued a report and recommendation addressing most of defendant's motion to suppress; however, that portion of defendant Charles Green's motion to suppress evidence on the ground that law enforcement failed to comply with Fed. R. Crim. P. 41 when obtaining a search warrant for defendant's residence was reserved pending an evidentiary hearing on the matter.

During the course of the evidentiary hearing held on April 23, 2010, facts came to light concerning information law enforcement obtained after the search warrant was issued for defendant's residence but before it was executed. This information indicated that at least some of the evidence thought to be in defendant's residence was not, in fact, in the residence on the day law enforcement originally intended to execute the warrant. Based on this information, defendant amended his motion to suppress to include an argument that probable cause supporting the search warrant had dissipated before the search warrant was executed and thus law enforcement violated the Fourth Amendment when it executed the search warrant. (*See* Amended Motion to Suppress, Doc. 73).

*B. The Search Warrant Affidavit*

The undersigned reviewed in detail the contents of the search warrant affidavit used to obtain the search warrant for defendant's residence in my first report and recommendation entered March 26, 2010 (Doc. 68). I will not, therefore, repeat the facts stated therein except as it is essential to the issues presently before me. In that report and recommendation, I concluded the search warrant affidavit sufficiently set forth probable cause to issue the search warrant for defendant's residence at 1210 South Cedar Avenue in South Pittsburg, Tennessee to search for "crack cocaine, powder cocaine, evidence of crack cocaine manufacturing, scales, smoking pipes, packaging, baggies, other weighing devices, bills, invoices, labels, mail receipts, and other written memorandum [sic] relating to the trafficking and manufacturing of crack cocaine...."

The affidavit used to obtain the search warrant in question was prepared by Chad Johnson. Chad Johnson identified himself as a detective with the Marion County Sheriff's Department assigned to the Bureau of Alcohol, Tobacco, Firearms, and Explosives Task Force (ATF Task Force) in Chattanooga, Tennessee and as a member of the Southeast Tennessee Methamphetamine Task Force and the Tennessee Narcotics Officer's Association. (Affidavit ¶ 1)[1]. He began an investigation into alleged violations of various state and federal narcotics laws in South Pittsburg, Tennessee on April 1, 2008 (Affidavit ¶ 5). Through the course of the investigation, he used at least five different confidential sources to make controlled purchases of crack and powder cocaine from at least 14 potential defendants residing in South Pittsburg.

---

[1] The search warrant affidavit prepared by Chad Johnson is cited herein after as "Affidavit ¶ __). The paragraphs in the Affidavit are not explicitly numbered; however, the defendant wrote numbers by the paragraphs in the Affidavit he filed as an exhibit to his motion. *See* Doc. 53. References to paragraphs in the Affidavit are made following the numbering by the defendant.

(Affidavit. ¶ 5). On four different occasions, April 1, 2008; December 5, 2008; December 16, 2008; and December 23, 2008, he used a confidential informant to make controlled buys of crack cocaine from the defendant using funds provided by law enforcement. On the last two occasions, the purchases were made at defendant's residence at 1210 South Cedar Avenue, South Pittsburg, Tennessee. (Affidavit ¶ ¶ 12 and 14). The affidavit further provided that law enforcement had talked with one Betty Jo McFarland and one Timothy Hutchins. Betty Jo McFarland stated she had made over 100 purchases of crack cocaine from defendant, some at his residence, over an undefined period of time (Affidavit ¶ 8). Timothy Hutchins stated he had bought crack cocaine from defendant on December 5, 2008. (Affidavit ¶ 11). The affidavit also stated defendant had at least three prior felony convictions for distribution of crack in the Circuit Court of Marion County. (Affidavit ¶ 18).

The search warrant was executed on December 31, 2008 and law enforcement recovered numerous rounds of ammunition, eleven grams of marijuana, a set of electronic scales, and $1,800 in cash from defendant's person.

*C. The April 23, 2010 Suppression Hearing*

The purpose of the evidentiary hearing on April 23, 2010 was to consider evidence bearing on whether the investigation leading to the search warrant for defendant's residence involved federal officers to the extent that Fed. R. Crim P. 41 applied to the search warrant application, and, if so, whether the exclusionary rule was an appropriate remedy for failure to comply with Rule 41.

Det. Chad Johnson was the only witness at this hearing. He testified to the following:

4

He has been a police officer for ten years. In February of 2005 he became a detective with the Marion County Sheriff's Department. He commenced an investigation into narcotics trafficking in the South Pittsburg, Tennessee area on April 1, 2008. At that time, he was already a detective with the Marion County Sheriff's Department, and his job was to investigate narcotics violations. (April 23, 2010 Hearing Transcript at 40).[2] He had been deputized for about four months as a part-time federal agent with the ATF Task Force. (Tr. at 9). As a member of the ATF Task Force, he was assigned to work with the ATF under ATF Agent and ATF Task Force Officer Daryll Hill. Within the Marion County Sheriff's Department, he reported to Chief Detective Gene Hargis. (Tr. at 18). His office remained with the Marion County Sheriff's Department in Jasper, Tennessee, and he did not initially have computer access to the ATF computer reporting system. (Tr. at 9). Johnson did not think there was a reason to bring federal charges against defendant until after the search warrant had been executed. (Tr. at 11). After the search warrant was executed and a firearm was found and after defendant confessed to distributing more than 500 grams of cocaine, Johnson determined defendant possibly could be prosecuted in the federal judicial system. (Tr. at 12).

The search warrant for Charles Green's 1210 South Cedar Avenue residence in South Pittsburg, Tennessee was obtained from Marion County General Sessions Court Judge Mark Raines whom Johnson had gone to many times in the past to obtain search warrants. Johnson used money provided solely by the Marion County Sheriff's Department to conduct the controlled buys referred to in his affidavit. No federal money was ever used in the controlled buys. (Tr. at 6). The two confidential informants Johnson used to initiate his investigation were

---

[2]All references to the April 23, 2010 hearing shall herein after be cited as "(Tr. at __.)"

informants secured by the Tennessee Bureau of Investigation (TBI) and the Marion County Sheriff's Department. (Tr. at 7). These same informants were used to prosecute nine other defendants for crack cocaine offenses in Marion County courts. (Tr. at 7). Later, in the course of the investigation, prior to obtaining the search warrant, these same informants became ATF informants. All in all, there were 30 other suspects besides Charles Green from whom the informants purchased crack cocaine and these other suspects were prosecuted in state court. At the time he was seeking the search warrant for defendant's residence, Johnson did not believe defendant would be prosecuted federally. (Tr. at 8). During the controlled buys referenced in the affidavit, Johnson was the only ATF Task Force Officer present. There were no federal agents involved in the controlled buys. (Tr. at 8).

By at least November 10, 2008, Johnson was given access to the ATF computer reporting system, and he prepared a "Report of Investigation" with an ATF investigation number. The Report of Investigation bore the heading "U.S. Department of Justice; Bureau of Alcohol, Tobacco, Firearms and Explosives." ATF Supervisor Daryl Hill signed the report on November 11, 2008. (Ex. 1, April 23, 2010 hearing). This report was prepared before Johnson prepared the search warrant affidavit and before he obtained the search warrant. Johnson prepared a second ATF Report of Investigation on December 1, 2008. (Ex. 2, April 23, 2010 hearing). In these two Reports of Investigation, Johnson is referred to as ATF TFO [task force officer] Chad Johnson.

Johnson further testified that in 2005 he was involved in other investigations that were not prosecuted federally. Johnson testified, "I guess it [the investigation involving Charles Green] became one [a federal investigation] when I inputted it into the investigative system at the request of my supervisor." (Tr. at 30). Johnson did so sometime in October of 2008. (Tr. at

6

33). The three controlled buys used to obtain probable cause to search were all conducted after Johnson obtained his office at the ATF Task Force offices, had access to the ATF computer system, had a federal number, and had a federal operation name assigned to the investigation. (Tr. at 39). During the course of the investigation in November and December of 2008, Johnson had conferences with his ATF Task Force Supervisor Daryl Hill regarding the use of the ATF reporting system. (Tr. at 44). Johnson also talked with Assistant United States Attorney Scott Winne prior to the execution of the search warrant about the possibility of prosecuting the defendant federally if sufficient evidence were obtained. (Tr. at 63-64).

After Johnson obtained the search warrant, he called ATF Agents Jason Reeves and Warren Smith and requested their assistance in executing the search warrant. (Tr. at 47). He had been giving reports to these agents about the development of the investigation. (Tr. at 48). Agent Reeves had also been working in this investigation. (Tr. at 48).

On December 29, 2008, Johnson went to the General Sessions Court Judge, as he normally did, to obtain the search warrant. He initially planned that officers from the Marion County Sheriff's Department would help execute the search warrant on December 29, 2008, but he learned from his informant that there would be no cocaine in the defendant's house that day. (Tr. at 49-51). Apparently, on December 29, 2008, defendant had come to the Marion County Sheriff's Department to meet with his probation officer and observed the SWAT team "preparing to do something" and decided it was "too hot" to possess drugs that day. (Tr. at 50). The informant, at Johnson's request, made contact with Charles Green and learned this information. (Tr. at 50-51). Three days later, on December 31, 2008, Johnson along with officers from the Marion County Sheriff's Department and Agent Mark Delaney of the TBI observed the

7

defendant leave his residence, go to Chattanooga, and return home. Johnson, ATF agents Warren Smith and Jason Reeves, TBI agent Mark Delaney and other Marion County deputies executed the search warrant at 1210 South Cedar Avenue. (Tr. at 51-52,54; Ex. 9 to April 23, 2010 hearing). During the hearing, the following questioning took place:

Q: But you were – now, you didn't serve it [the search warrant] because the information that led up to you getting it [the search warrant] was no longer good, you no longer believed or you knew in fact that there were not drugs at that location and then you waited until you had new information not contained in the search warrant to determine that drugs were back in the location?

A: Yes. That's correct.

Q: Okay. And what was that information?

A: Well, that information was that on the date that we executed the search warrant that the informant had went [sic] by there and Mr. Green had stated that he would have some weed later. And at that point, he leaves and goes to Chattanooga.

(Tr. at 52).

Q: ...now you're saying that you had reason to believe that there might be marijuana coming to the residence and that cocaine that you thought had been there was gone.

A: Yes.

(Tr. at 56).

Agent Johnson also testified that the search warrant was not only for cocaine but also for evidence of crack cocaine manufacturing, receipts, phone records and paraphernalia which could still be present in the residence even if cocaine was not. (Tr. at 56). When the defendant went to Chattanooga on December 31, 2008, Johnson observed defendant enter and exit an apartment, but he did not actually see defendant purchase drugs. (Tr. at 57-58).

8

Of the 30 defendants that Johnson investigated using the same informants used to investigate Charles Green, only one, Calvin Green, was prosecuted federally in addition to Charles Green. The other 29 had state charges brought against them. (Tr. at 77-83). However, there were other individuals investigated under the same federal investigation number as Charles Green but using different informants than the ones who investigated Charles Green. Of these suspects, five were prosecuted federally. (Tr. at 80-82).

### III. Analysis

*A. Rule 41*

Defendant argues that Det. Johnson is a federal agent and his failure to follow Fed. R. Crim. P. 41 by obtaining a search warrant from a federal judicial official or a state court of record as opposed to a state general sessions judge renders the warrant and, subsequently, the search invalid. Rule 41(b)(1) authorizes a federal magistrate judge or a state court of record to issue a warrant. The government agrees with defendant that a state general sessions court is not a court of record.

Rule 41 does not apply where federal agents have little or no involvement in the investigation at issue. *See United States v. Marshall*, 192 Fed. Appx. 504 (6th Cir. Aug. 22, 2006); *see also United States v. Shields*, 978 F.2d 943, 946 (6th Cir. 1992) ("Rule 41 does not apply in a case where no federal officers are involved."); *United States v. Buis*, 678 F.Supp.2d.665, 674 (E.D. Tenn. 2009) (Rule 41 does not apply where no federal agents were involved in executing the search warrant).

On the other hand, where federal agents have had significant involvement in an investigation leading to a search warrant, the Sixth Circuit has held Rule 41 does apply to the

9

warrant application process. *See United States v. Searp,* 586 F.2d 117 (6th Cir. 1978). *See also United States v. Hunter,* 4 Fed.Appx. 295, 301 (6th Cir. 2001) ("Mere federal involvement is not enough; there must be significant involvement prior to the search.").

*Searp* involved a joint federal and state investigation of several bank robberies. A federal agent obtained the search warrant in question, several federal agents participated in the search, and one federal agent directed the search. In light of these facts, the Sixth Circuit concluded "[t]his was a federal search for evidence of a federal crime conducted by federal officers," *id* at 1121, and therefore Rule 41 did apply. *Id.* at 1121-22.

The evidence in the instant case tends to indicate that while this investigation started out as solely a state investigation, the ATF became more involved by the time Johnson applied for and executed the search warrant, primarily because Johnson's role as a deputized ATF Task Force officer began to mature. Nevertheless, the undersigned concludes it is not necessary to make an ultimate finding on this issue because even if Rule 41 applied, application of the exclusionary rule in this instance is not appropriate.

The suppression of evidence for violations of Rule 41 is not appropriate unless "(1) there was 'prejudice' in the sense that the search would not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." *Searp*, 585 F.2d at 1125; *accord*, *United States v. Twenty Thousand, Two Hundred Eighty Seven Dollars*, 709 F.2d 442, 448-49 (6th Cir. 1983);*United States v. Slater*, 209 Fed.Appx. 489, 496 n.1 (6th Cir. Dec. 22, 2006); *United States v. Dirr*, 2009 WL 5892996 (E.D. Tenn. Aug. 28, 2009) (Shirley, M.J.).

There was no evidence presented to support a finding that the search warrant would not have been issued had Johnson gone to a federal magistrate judge or that the search would have been less abrasive had he done so. In addition, there is no evidence of intentional or deliberate disregard of Rule 41. Johnson testified he routinely conducts narcotics investigations as a detective for the Marion County Sheriff's Department and, in doing so, he routinely obtains search warrants from the Marion County General Sessions Judge. The investigation involving Charles Green was initiated as part of his duties with the Marion County Sheriff's Department, and Johnson was simply following his normal routine in obtaining the search warrant at issue from the General Sessions Judge. There was no intentional attempt to skirt Rule 41. Accordingly, even if Rule 41 did apply, the exclusionary rule does not.

*B. Dissipation of Probable Cause*

The law is clear that in order to pass constitutional muster, a search warrant must be supported by probable cause at the time it is issued *and* at the time it is executed. *United States v. Bowling*, 900 F.2d 926, 932 (6th Cir. 1990). Defendant argues that the search warrant for his residence lacked probable cause at the time it was executed because Johnson had learned from the informant on the day Johnson had originally intended to execute the search warrant that there was no cocaine on the premises. Thus, argues defendant, when Johnson received new information that marijuana was on the premises, Johnson was required under the Fourth Amendment to obtain a new search warrant from a neutral magistrate, and, since Johnson did not, evidence found during the search must be suppressed. Defendant relies upon *United States v. Bowling*, 900 F.2d 929 (6th Cir. 1990) to support his argument.

Relying on *United States v. Harris*, 255 F.3d 288 (6th Cir. 2001), the government counters that the inability to procure drugs from the premises on one occasion after probable cause to search has been established does not defeat probable cause where it is based on the use of the premises for an ongoing drug trafficking operation.

In *United States v. Bowling*, 900 F.2d 929 (6th Cir. 1990), police obtained a search warrant for a trailer home to look for evidence of marijuana cultivation and distribution after receiving information that the occupants of the trailer were the individuals responsible for the field of marijuana located near the trailer. While officers were in the process of obtaining the warrant, other officers in the proximity of the trailer engaged in conversation with the occupants who gave consent to the officers to search the trailer. These officers, pursuant to the consent, conducted what they described as a "very quick search" lasting about 15 minutes in which they found nothing incriminating. About two hours later, other officers arrived with the warrant and commenced a search pursuant to it. At the commencement of the second search, one of the officers involved in the consent search informed them that he had already made a "preliminary search" and had found nothing. The judge who issued the search warrant knew nothing about the unsuccessful "preliminary search." The second search produced incriminating items including ammunition, plant food, and marijuana. Bottled marijuana seeds were also found in an automobile on the premises. The Sixth Circuit stated:

> Because no exigent circumstances are presented by the facts of this case, the officers should have refrained from the second search until a neutral magistrate determined that probable cause continued to exist. Notwithstanding the officers' failure to do this, the fruits of the second search are not to be suppressed if this court finds that a neutral magistrate would have determined that probable cause existed to conduct a second search despite prior fruitless consent search.

*Id.* at 933. The court ultimately concluded that the first search was not so broad as to dissipate probable cause for the second search because the first search was not as "intricate" as that authorized by the search warrant, and the principal incriminating items, the bottled marijuana seeds, were found in a car on the premises which was not searched during the first search. *Id.* at 934. The court concluded,

> Thus, although we hold that police officers may not take the probable cause determination into their own hands when presented with non-exigent circumstances such as the ones in this case, the consent search here was not so broad as to dissipate probable cause or imply bad faith. We therefore affirm the denial of suppression.

*Id.*

In *United States v. Harris*, 255 F.3d 288 (6th Cir. 2001), police obtained a search warrant for a residence after using an informant to make two controlled buys at the residence from a man called "Fatboy." The same day the warrant was issued but before it was executed, the informant attempted unsuccessfully to conduct another buy at the residence. Police waited until the next week to execute the search warrant because the informant told police that drugs might not be found at the residence over the weekend. Four days after its issuance, police executed the warrant and found crack cocaine. One of the defendants argued that at the time the warrant was executed it was no longer supported by probable cause because the informant had failed to make a drug purchase on the day the warrant was issued and police had then waited four days to execute the warrant. The Sixth Circuit rejected this argument stating:

> ...the inability of the confidential informant to make a third controlled purchase of crack cocaine and the four day delay in the execution of the warrant are of little consequence given the prior controlled purchases and the continuing presence of "Fat Boy" at the residence.

* * *

> This case is no different than it would have been had Officer Hope sent the informant into the residence at 1241 Poplar Street on three occasions prior to applying for the search warrant and the informant had been successful in purchasing drugs on only two of the occasions. Probable cause is not defeated simply because an informant was unable to purchase drugs on one occasion prior to the execution of the search warrant. *See, e.g., United States v. Charles*, 138 F.3d 257, 263 (6th Cir.1998) (omission from search warrant affidavit that law enforcement officer made several unsuccessful attempts to purchase drugs from subject does not make the affidavit false or defeat probable cause); *United States v. Sugar*, 606 F.Supp. 1134, 1150-51 (S.D.N.Y.1985) (probable cause not vitiated by failure of officer to inform magistrate that undercover agent had been unsuccessful in attempt to obtain drug from defendants). It is not as if the informant reported to Officer Hope that "Fat Boy" no longer lived at 1241 Poplar Street, or that the drug operation had ceased. The informant simply told Officer Hope that drugs might not be found over the weekend.

*Id.* at 294.

Upon initial examination of these two cases it might appear that *Bowling* and *Harris* are at odds with one another, but a more careful analysis leads the undersigned to conclude they are not. While both raise questions concerning the dissipation of probable cause before a search warrant is issued and both involved searches for evidence relating to illegal drugs, the underlying drug business involved in each case was key to the courts' different analyses.

Law enforcement in *Bowling* was investigating whether the defendants were growing marijuana in a field near their trailer home. They were looking for evidence in the trailer home tying the defendants to the field of marijuana. A field of marijuana is stationary; it isn't going to be moved until harvest time. It is logical to assume that items used to cultivate and tend a field of marijuana, if they are stored in the trailer home or its premises, will continue to be stored in the trailer home or its premises at least until the field of marijuana is harvested. A dry search of

the premises at any point in time during the cultivation of the marijuana raises a legitimate question as to whether any evidence of marijuana cultivation exists at all on the premises.

On the other hand, a house which serves as a point of sale for an ongoing drug trafficking business will not contain the same drugs sold to an informant during a controlled buy; drugs come and go within the house as part of the normal supply and demand of the trafficking business. Thus, as the *Harris* Court concluded, one instance in which an informant reports drugs are not in the house does not diminish the fair probability that drugs will be found in the house soon thereafter.

As the undersigned stated in the March 26, 2010 Report and Recommendation, "[T]he affidavit adequately addresses the nexus by providing sufficient information from which one can conclude that defendant was involved in a steady, continuous crack distribution scheme which was using 1210 South Cedar Avenue as the point of sale within the two weeks prior to the search warrant being issued." (March 26, 2010 Report and Recommendation, Doc. 68 at 9). The undersigned also stated, "When considering all the information in the affidavit as a whole, I conclude there existed a fair probability that defendant would use 1210 South Cedar Avenue to sell crack cocaine on an ongoing basis and that, therefore, there existed a fair probability that evidence of drug trafficking would be found at this address." *Id.* Had Johnson's information been that defendant had moved or discontinued altogether using the premises to sell cocaine, then probable cause would have dissipated. Probable cause did not dissipate simply because on that day the defendant felt it was too hot to make a sale. There would be other opportunities to make a sale.

Further, law enforcement knew that even though cocaine was not on the premises at a specific moment in time, there was still a fair probability that other indicia of a cocaine trafficking business would be on the premises such as scales, drug paraphernalia, evidence of crack manufacturing, and records of drug sales. The warrant covered these items as well as cocaine itself. Thus, I conclude that despite the informant's information that cocaine was not on the premises on December 29, 2008, probable cause still existed to support the search warrant.

There is another Sixth Circuit case which should be discussed in regard to this motion to suppress: *United States v. Micou*, 1995 WL 99168 (6th Cir. 1995) (per curiam) (unpublished). In *Micou,* state police stopped a vehicle and, pursuant to a consent search, found 200 pounds of marijuana in the trunk. The driver agreed to cooperate with police and drove the vehicle to a motel. From there, another person drove the suspect vehicle to a house, owned by the defendant, where it was parked in the garage and the garage door was shut. With this information in hand, police obtained a search warrant for the house. Before the search warrant was executed, the suspect vehicle left the house and was subsequently stopped, searched, and found to have 100 pounds of marijuana in it. The warrant was subsequently executed and incriminating evidence was found in the house. The defendant argued that had the judicial officer who issued the search warrant known that the suspect vehicle had left his house, then no search warrant would have been issued since probable cause had dissipated. The court found the argument without merit reasoning:

> When new circumstances bring into question the original finding of probable cause, the officers seeking the warrant must bring new information to the magistrate's attention. *United States v. Bowling*, 900 F.2d 926, 933 (6th Cir.), cert. denied, 498 U.S. 837 (1990). If, however, this court finds that a neutral magistrate would still have found probable cause to exist had she been apprised of the new

information, then the fruits of the warrant are not to be suppressed. *See id.* at 933-34. In the instant case, the additional facts that would have been brought to the magistrate's attention included the fact that a later stop of the car that left Micou's residence revealed that half of the marijuana in the car had been removed. We find that knowledge of additional facts in this case would not have dissipated probable cause.

*Id.* at *3. In other words, *all* new information which arises after the search warrant is issued bearing on probable cause must be considered, and if probable cause exists with *all* new information, then exclusion of evidence is not appropriate. In the instant case before the undersigned, Johnson had information that on December 29, 2008, the defendant did not have drugs but that a few days later he did. Thus, probable cause remained intact and, even though Johnson did not provide the new information to the judicial officer who issued the warrant as he should have, the exclusionary rule does not apply.

## IV. Conclusion

For the reasons stated herein, it is RECOMMENDED that defendant Charles Green's Motion to Suppress [Doc. 47] and Amended Motion to Suppress [Doc. 73] be DENIED.³

Dated: July 2, 2010

s/*William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

³Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).