UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 1:09-CR-87 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| CHARLES E. GREEN | ) | |


## <u>MEMORANDUM</u>

Before the Court are two motions to suppress filed by Defendant Charles Green ("Defendant") (Court File Nos. 47, 73). After carefully considering the filings of Defendant and the government (Court File Nos. 47, 48, 49, 53, 54, 63, 69, 73, 74, 75, 78), the Court finds the magistrate judge's legal analysis to be correct under the relevant law and will deny both Defendant's motions to suppress (Court File Nos. 47, 73).


## I.     PROCEDURAL HISTORY

Defendant's initial motion to suppress evidence collected during the search of his residence and his person (Court File No. 47) was referred to United States Magistrate Judge William B. Mitchell Carter to conduct an evidentiary hearing, if necessary, and to make a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). On March 26, 2010, the magistrate judge filed a report and recommendation ("R&R") recommending Defendant's motion be denied but reserved ruling on the issue of whether Defendant's warrant was obtained in violation of Rule 41 of the Federal Rules of Criminal Procedure until after a hearing on the matter (Court File No. 68).

At the Rule 41 hearing, Detective Chad Johnson testified the officers waited to execute the search warrant after receiving information from informants Defendant did not have any drugs at the residence the day the warrant was issued. This testimony formed the basis for Defendant's amended motion to suppress (Court File No. 73). On July 2, 2010, the magistrate judge filed an R&R recommending both the original motion (including the Rule 41 issue) and the amended motion be denied (Court File No. 77).

Defendant's objection to the first R&R contains multiple challenges (Court File No. 26). He cites as error the magistrate judge's failure to address whether the seized items exceeded the scope of the warrant. He contends the affidavit on its face does not support probable cause and further argues the omission of certain information from the affidavit was intentional and warrants a *Franks* hearing. In addition, Defendant filed an objection to the second R&R, claiming the magistrate judge erred in making certain factual determinations from Detective Johnson's testimony and that the judge's reliance on certain cases was misplaced (Court File No. 78).

## II.    STANDARD OF REVIEW

This Court must conduct a *de novo* review of those portions of the report and recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C). The Court has "broad discretion" in conducting a *de novo* determination and is not required to rehear any contested testimony. *United States v. Raddatz*, 447 U.S. 667, 674, 681 (1980). "Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on the magistrate's proposed findings and recommendations." *Id.* at 676.

## III.    RELEVANT FACTS

On December 29, 2008, the Marion County General Sessions Judge issued a warrant for the search of a residence at 1210 South Cedar Avenue, South Pittsburg, Tennessee (Court File No. 53). The warrant authorized a search for "controlled substance, to wit: crack cocaine, powder cocaine, evidence of crack cocaine manufacturing, scales, smoking pipes, packaging, baggies, . . . U.S. currency . . . of any said person(s) on the premises, of the defendant and of the said house . . ." (*id.* p. 2).  As a result of this search, law enforcement seized a loaded firearm with multiple rounds of ammunition, approximately eleven grams of marijuana, and electronic scales from the residence and $1800 in cash from Defendant's person (*id.* p. 10).

The search warrant was issued pursuant to an application and affidavit prepared the same day by Detective Roger Chadwick Johnson of the Marion County Sheriff's Department ("Detective Johnson") (*id.* p. 2). Detective Johnson is currently assigned to the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) Task Force in Chattanooga, Tennessee and is a member of both the Southeast Tennessee Methamphetamine Task Force and the Tennessee Narcotics Officer's Association (*id.* p. 3).  The following facts were given in the affidavit and considered by the Marion County General Sessions Judge,  as justification for the search warrant:[1]

Detective Johnson has been a police officer since 1999 and a Detective with Marion County Sheriffs' Department since February 2005 ( Affidavit ¶ 1). During his assignment with the ATF Task Force, he has used both overt and covert methods of investigation and has participated in,

---

[1] The defendant included paragraph numbers when he filed Detective Johnson's Affidavit with the Court (Court File No. 53, pp. 3-8 ("Affidavit")).  The original affidavit was not numbered, however, the Court will refer to these numbered paragraphs for purposes of clarity.

organized, and initiated several investigative efforts targeting drug dealers and criminal organizations (*id.*). He has become familiar with the habits, practices and characteristics of individuals who deal in controlled substances and their organizations from his years of experience with law enforcement and training (*id.* ¶ 2). Based on this experience, he finds other supporting items including "drug paraphernalia as defined in TCA 39-17-402(12); scales and packaging materials[;] . . . money(proceeds) of or capital for controlled substance transactions; weapons used to protect the controlled substance(s) or (proceeds)" are often present at locations where drug trafficking occurs (*id.* ¶ 3).

Detective Johnson's interest in Defendant arose out of an investigation that started in April 2008 (*id.* ¶ 5). This investigation involved five different confidential sources purchasing from at least fourteen potential defendants residing in the South Pittsburg area as well as interviews conducted with individuals with personal knowledge of narcotic distribution by the potential defendants (*id.*). Defendant was identified as being a "key figure in the narcotics distribution taking place in the South Pittsburg area" based on this investigation (*id.*). On April 1, 2008, a controlled purchase from Defendant was arranged through a confidential source ("CS") wherein the CS had a recording device and was given $100 in marked funds (*id.* ¶ 6). Surveillance agents observed as the CS, after picking up a passenger, traveled to "one of Green's residences, which is located at 803 Hamburg Road" where Detective Johnson observed a black male lean in to the driver's side window and appear to have a conversation with the CS (*id.*). The CS then left the Hamburg Road residence, dropped off the passenger at Hemlock Street and returned to the briefing location where he surrendered one gram of crack cocaine he claims he purchased from Defendant (*id.*). Defendant was identified by the CS as the black male seen leaning in to the driver's window of the CS's vehicle

(*id*.). Detective Johnson credits the CS's testimony as the CS provided drug information in the past which was corroborated and known to be accurate (*id*.).

Detective Johnson conducted an interview with Betty Jo McFarland ("McFarland") in November 2008, wherein she states she made "over 100 purchases of crack cocaine from Green" (*id.* ¶ 8). McFarland avers she made these purchases both from Defendant's residence and through their meetings at various locations throughout Marion County (*id*.).

On December 5, 2008, a CS, equipped with a recording device and $220 in marked funds, spoke with Timothy Hutchins ("Hutchins") who advised he could go to Charles Green's residence and obtain crack cocaine for the CS (*id.* ¶ 9). Detective Johnson followed the CS and Hutchins to an alley that runs behind Defendant's residence where he observed Hutchins enter the back door of the residence and return to the vehicle (*id*.). Detective Johnson then followed the CS and Hutchins back to Hemlock Street where Hutchins exited the vehicle and the CS proceeded to meet Detective Johnson at the secure meeting location (*id.*). At the meeting location, the CS surrendered one gram of suspected crack cocaine purchased from Hutchins (*id*.). Later that day, Detective Johnson, acting in an undercover capacity, made a controlled purchase of hydrocodone tablets from Hutchins and Hutchins was taken into custody (*id.* ¶ 11). During his interview with Detective Johnson, Hutchins stated he traveled with the CS to Defendant's residence earlier in the day and he did in fact purchase $220 worth of crack from Defendant, which he provided to the CS (*id*.)

A third purchase was purportedly made from Defendant on December 16, 2008, after a CS arranged to pick up Defendant's brother, Calvin Green ("Calvin"), and travel to Defendant's residence to purchase crack cocaine (*id.* ¶ 12). The CS was equipped with a recording device and given $100 in marked funds. Surveillance agents followed the CS as he picked up Calvin, stopped

at an Exxon gas station where Calvin purchased beer, and continued to the residence at 1210 South Cedar Avenue (*id*.). Detective Johnson and other agents observed Calvin enter this residence through the back door and then return to the CS's vehicle (*id*.). These same agents followed the CS as he drove Calvin back to his home and proceeded to the secure meeting location (*id*.). After surrendering the one gram of crack cocaine purchased from Calvin, the CS stated he provided Calvin $100 in marked funds and Calvin went into Defendant's residence and purchased the cocaine (*id*.). Detective Johnson also describes this CS as one who has previously provided accurate drug information in the past (*id*. ¶ 13).

A fourth purchase, similar to the one described in the previous paragraph, was made on December 23, 2008 (*id.* ¶ 14). Again, a CS had arranged to pick up Calvin and take him to the defendant's residence to purchase crack cocaine for the CS (*id*.). The CS, after being equipped with a recording device and $100 in marked funds, traveled to pick up Calvin at his residence while being followed by surveillance agents (*id*.). Agents observed the CS and Calvin stop at a Conoco gas station where Calvin purchased beer (*id.*). The CS and Calvin proceeded to an alley behind Defendant's residence at 1210 South Cedar Avenue (*id*.). Surveillance agents observed Calvin exit Defendant's residence and return to the CS vehicle (*id*.). After taking Calvin back to his residence, the CS met with agents and surrendered one gram of crack cocaine he had just purchased (*id*.). The CS stated he provided Calvin with the $100 in marked funds and Calvin went into Defendant's residence to purchase crack cocaine (*id*.). The CS had been previously utilized by Detective Johnson and had provided accurate drug information in the past (*id*. ¶ 15).

Finally, Detective Johnson asserts his personal knowledge Defendant has at least three prior felony convictions for distribution of crack cocaine and one federal firearms-related felony

conviction (*id.* ¶ 17).

Although the warrant was issued on December 29, 2008, the search did not occur until December 31, 2008. At the hearing on April 23, 2010, Detective Johnson testified about the circumstances surrounding the delay between the issuance of the warrant on December 29, 2008, and the execution of the warrant on December 31, 2008.

> A     We were going to serve the warrant that day [December 29] and we used the informants to make contact and found out that there was nothing going to be there, so that's why we held off and did not serve the warrant that day.
>
> Q     There was nothing – what do you mean "there was nothing going to be there"?
>
> A     There were no drugs going to be there then.
>
> Q     After you got the warrant signed and were ready to go, you found out that the information was stale, there were no longer drugs in that residence?
>
> A     Yeah. We found out that there was no, that there were no, that there was nothing going to be there at the time.
>
> . . .
>
> Q     [You served the warrant on] The 31st, three days later?
>
> A     Yes. We established surveillance on Mr. Green's residence, and then followed Green from his residence to Chattanooga, and then back to his residence and executed the search warrant. At the time we believed that Mr. Green had cocaine.
>
> . . .
>
> Q     But you were - - now, you didn't serve it because the information that led up to you getting it was no longer good, you no longer believed or you knew in fact there were not drugs at that location and then you waited until you had new information not contained in the search warrant to determine that drugs were back in the location?
>
> A     Yes. That's correct.
>
> Q     Okay. And what was that information?

A       Well, that information was that on the date that we executed the search warrant that the informant had went by there and Mr. Green had stated that he would have some weed later. And at that point, he leaves and goes to Chattanooga.

                                        . . .

Q       Now, the search warrant was obtained for crack cocaine. Correct?

A       Yes.

Q       And now you're saying that this CI told you that he's going to make, he's going to get some marijuana?

A       Yes.

Q       So, it would have switched the whole focus of the search, correct, from crack cocaine to marijuana?

A       No, not necessarily. I mean, the search warrant is not just for the controlled substance itself, it was for evidence of crack cocaine manufacturing, receipts, phone records, paraphernalia. It didn't just specify that it was to only look for crack cocaine.

Q       But that was the drug you had probable cause to believe was present. Correct?

A       That's correct.

Q       All right. And now you're saying that you had reason to believe that there might be marijuana coming to the residence and that the cocaine that you thought had been there was gone?

A       That's correct.

                                        . . .

Q       All right. So, you're there with everybody ready to serve the warrant?

A       Yes.

Q       And you don't serve it because you're still confirming that there were no drugs in there. Correct?

A       Yes.

                                          8

Q       All right.  And then you go and do what?

A       We're still maintaining surveillance of the residence when Mr. Green
        leaves and travels to Chattanooga.

(Court File No. 72 ("Johnson Trans."), pp.  51, 52, 55-57).    Detective Johnson then describes

watching Defendant arrive at an apartment complex and return to a car.   After these events, the

search warrant was executed on December 31, 2008.


IV.     **ANALYSIS**

Defendant contends all evidence seized as a result of the search warrant was obtained in

violation of his Fourth Amendment rights and should be suppressed (Court File Nos. 47, 73).

A.      **The Scope of the Warrant**

Defendant's first objection stems from the magistrate judge's failure to address Defendant's

contention the cash, ammunition and the firearm all exceeded the scope of the search warrant.

Defendant argues these items are not "contraband per se" and there is no basis to presume

Defendant's possession of these is unlawful since the only basis to indicate 1210 South Cedar Road

is the defendant's residence is Detective Johnson's "conclusory statements" (Court File No. 69, pp.

1-2).  In his suppression motion, Defendant argues the warrant itself only provides for seizure of

"illegal controlled substance including crack cocaine or any chemical, equipment or precursor that

is used in the manufacture of crack cocaine," thus the seizure of the firearm, ammunition, and

currency was beyond the "strict limits of items to be seized" (Court File No. 48, p. 3).   The Court

disagrees.

The search warrant explicitly incorporated by reference Detective Johnson's affidavit,

"ATTACHED HERETO AND BY REFERENCE MADE A PART OF AS IF COPIED FULLY HEREIN" (Court File No. 53 p. 2). In his affidavit, Detective Johnson specifically includes "money (proceeds)" as well as "weapons used to protect the controlled substance(s) or (proceeds)" with the supporting items and materials associated with the use and trafficking of controlled substances (Affidavit ¶ 3). Any potential ambiguity of the drug-related items to be seized in the warrant is cured by the affidavit which has been incorporated by reference. *United States v. Gahagan*, 865 F.2d 1490, 1497 (6th Cir. 1989); *United States v. Lawson*, No. 05-5598, 2006 WL 1538889 at * 3 (6th Cir. June 5, 2006).

Furthermore, evidence or instrumentalities of crime may be seized even though not specifically listed in the search warrant if they are "reasonably related to the offense which formed the basis for the search warrant." *United States v. Brown,* 49 F.3d 1162, 1169 (6th Cir. 1995); *see also United States v. Wright*, 343 F.3d 849, 863 (6th Cir. 2003) (finding the items were "seized pursuant to a valid search warrant and they related directly to the two crimes charged and the information provided by the attached affidavit"); *United States v. Korman*, 614 F.2d 541, 547 (6th Cir. 1980) (stating "evidence of the commission of a criminal offense" and the "instrumentality of a crime" could be seized although not "specifically listed in the search warrant."). The presence of firearms and a significant amount of cash is often used to support an inference of drug trafficking. *See, e.g., United States v. Hill*, 142 F.3d 305, 311 (6th Cir. 1998) (holding intent to distribute could be inferred from the presence of "various items commonly used to conduct drug trafficking activity, including "large sums of U.S. currency"); *United States v. Rodriguez*, 882 F.2d 1059, 1063 (6th Cir. 1989) (finding an inference of intent to distribute cocaine based on evidence of "scales, commonly used to weigh drugs; cash, arguably obtained from drug transactions; and the handgun, which would

be consistent with the protection and coercion common in transacting narcotics").

Accordingly, the Court finds seizure of the firearm, ammunition, and cash was within the scope of the warrant and Defendant's objection on this basis fails to establish grounds for relief.

**B.      Validity of Search Warrant/ Probable Cause**

Defendant objects to the magistrate judge's finding Detective Johnson's affidavit on its face supports probable cause.  In support of his objection, Defendant challenges the reliability of informants, the multiple assertions which were conclusive, deficiencies in "controlled purchases," and overall lack of nexus between the current activities of the defendant and the location to be searched (Court File No. 69, p. 2). The magistrate judge, after considering the reliability of the informants, corroborative evidence by the government and timeliness of information, concluded the affidavit did provide ample probable cause. This probable cause was sufficient to warrant a search of both the residence,  "defendant was involved in a steady, continuous crack distribution scheme which was using 1210 South Cedar Road as the point of sale" and Defendant himself as "evidence of such dealings would be found on his person" (Court File No. 68 ("R&R"), p. 9). The Court agrees with the magistrate judge's analysis and finds based on the totality of the circumstances, the affidavit established probable cause.

In order for a judge to issue a warrant, law enforcement officers must present sufficient evidence from which the judge can conclude from the totality of the circumstances that contraband or evidence of a crime will be found in a particular place. *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Under the totality of the circumstances approach established by the Supreme Court, an issuing judge "must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him,

including the veracity and basis of knowledge of persons supplying the hearsay information there is probable cause." *United States v. Smith*, 510 F.3d 641, 652 (6th Cir. 2007) (citing *Gates*, 462 U.S. at 230-32, 238). These circumstances must indicate why evidence of illegal activity will be found in a particular place, in other words, there must be "a nexus between the place to be searched and the evidence sought." *United States v. Couch*, 367 F.3d 557, 560 (6th Cir. 2004).

If the evidence presented by the affiant is mainly obtained from a confidential source, the affiant must provide the issuing judge with enough information that he can independently conclude the CS is reliable. *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005). However, in the absence of indicia of the informants' reliability, "independent police corroboration may be established by a police-monitored controlled buy." *United States v. Henry*, 299 F. App'x 484, 486-87 (6th Cir. 2008). Ultimately, "[p]robable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Smith*, 510 F.3d at 647-48 (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir.1990).

The Court concludes Detective Johnson's affidavit establishes reasonable grounds for belief Defendant was engaged in criminal activity at the residence searched.

### 1.     Reliability of the Informants

Defendant objects to the magistrate judge's determination the informants in the case are reliable and argues various differences between his circumstances and those in *United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000) (Court File No. 69 pp. 6-8). Defendant is correct in his assertion the description of the informants' reliability in the affidavit is more general than details provided in *Allen*. However, unlike *Allen*, other circumstances, including Detective Johnson's own observations, corroborate the statements made by the informants. The identity of the informants

may not have been disclosed to the judge issuing the warrant, but this is far from a situation where a warrant is issued based on an anonymous tip sparse in detail and wholly uncorroborated by the police.

Detective Johnson references his experience with the informants and credits their information as accurate based on previous drug information they provided in the past (Johnson Affidavit ¶¶ 7, 10, 13, 15). In each of the controlled purchases the CS is describing their personal involvement in the transaction and this further supports a finding of reliability. *See Allen*, 211 F.3d at 976 (discussing the requirement of corroboration as unnecessary where information alleged is of "direct personal observation of criminal activity"). Finally, Detective as well as other law enforcement observe, record and witness much of the activity described by the informants, thus providing corroboration of facts alleged. *See United States v. Jackson*, 470 F.3d 299, 308 (6th Cir. 2006) (concluding "corroboration of events that occurred during the controlled buy, as set forth in the affidavit, provide sufficient probable cause to sustain issuance of the search warrant"); *United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000)(noting "information received from an informant whose reliability is not established may be sufficient to create probable cause when there is some independent corroboration by the police of the informant's information"); *Williams*, 224 F.3d at 532-33(holding an informant need not be named to the magistrate in order to sustain a finding of probable cause where there is additional evidence that sufficiently corroborates the informant's information).

In *United States v. Coffee*, 434 F.3d 887 (6th Cir. 2006), police corroboration was found to override the lack of proof of the CS's reliability because the officer observed the CS enter and leave the premises at which the drugs were obtained and was shown the drugs immediately after the CS

departed the premises. The observation by the officer was sufficient regardless of the fact the affidavit contained no assertions of the CS's reliability. *Id.* at 895. Detective Johnson's affidavit not only provides assertions as to the CS's reliability, but also describes surveillance of either the CS's interaction with Defendant (Affidavit ¶ 6) or the CS's interaction with a third-party who entered the 1210 South Cedar residence and exited with cocaine (*Id.* ¶¶ 9, 12, 14). It is permissible for the affiant officer to rely on another officer's observations in an affidavit supporting a search warrant. *See United States v. Woods*, 544 F.2d 242, 260 (6th Cir. 1976) (noting when assessing whether probable cause exists, appeals court "mutually imputes the knowledge of all the agents working together on the scene and in communication with each other"); *accord United States v. Rodriguez-Suazo*, 346 F.3d 637, 650 (6th Cir. 2003). Thus, to the extent other officers observed aspects of the drug transaction leading up to the arrival at the 1210 South Cedar residence, this knowledge is attributable to Detective Johnson.

In addition, Detective Johnson provided a specific account of the transactions including his procedure of checking the CS and vehicle both before and after each transaction in his affidavit. (Affidavit ¶¶ 6, 9, 12, 14). *See United States v. Smith*, 337 F. App'x 500, 505 (6th Cir. 2009) ("proper measures were taken in this case to ensure the reliability of the controlled purchases, including thoroughly searching the informant and the vehicle used before the purchase and maintaining a visual on the confidential informant going to and coming from the residence.").

The Court finds the affidavit shows substantial police investigation and corroboration of the CS's testimony even if Detective Johnson's description of his prior history with the CS's information is not as specific as that presented in *Allen*.

2.      **Unsupported Assertions and Deficiencies in Controlled Purchases**

Defendant challenges numerous statements made in Detective Johnson's affidavit as unsupported in his motion to suppress (Court File No. 48, pp. 5-15). The Court agrees with the magistrate judge's conclusion the "omissions appear to be more exacting details of the investigation itself and arguably bear on the question of whether the government will be able to prove guilt beyond a reasonable doubt" (Court File No. 68 (R&R), p. 11). *See also United States v. Murphy*, 241 F.3d 447, 458 (6th Cir. 2001) ("That defendant has pointed out specific factual details that the task force agents could have provided in the affidavit to the magistrate does not negate a finding of probable cause; this Court does not review the sufficiency of an affidavit through such a lens."). The defendant also takes issue with the third-parties involved in the controlled purchases and the fact informants in the controlled purchases did not actually witness Defendant personally sell the drugs in the 1210 South Cedar residence. Although these arguments may aid in the defense at trial, they do not negate a finding of probable cause for the search warrant. "The affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *Allen*, 211 F.3d at 975.

The Court looks to the affidavit as a whole and finds it contains facts: (1) describing multiple controlled purchases (substantiated by statements by confidential informants and observation by law enforcement); (2) acknowledging Defendant's prior history involving drug trafficking; (3) detailing purchases of crack cocaine from the 1210 South Cedar residence and from Defendant himself through a car window at a different location; and (4) demonstrating history of drug trafficking through testimony of Betty Jo McFarland's prior drug transactions with Defendant. While additional facts may be necessary to ultimately prove Defendant guilty beyond a reasonable doubt, the affidavit satisfies the lesser burden of probable cause necessary to issue a search warrant.

### 3.     Nexus between Activities of Defendant and Location Searched

Defendant contends "there is no basis to state that 1210 South Cedar Avenue is" Defendant's residence and because neither Defendant nor anyone else was seen selling drugs in this residence, there is an insufficient nexus between Defendant and the location searched (Court File No. 69, pp. 5-6). "To justify a search, the circumstances must indicate why evidence of illegal activity will be found in a particular place. There must, in other words be a nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004).

The Court agrees with the magistrate judge the affidavit "presents no basis, other than [Detective Johnson]'s conclusory statement, to determine that 1210 South Cedar is the defendant's residence" (Court File No. 68 (R&R), p. 9). However, based on the surveillance of controlled purchases, the testimony of the informants, Defendant's prior convictions for selling crack cocaine, and the location of the transactions on December 16 and 23, the Court finds a sufficient nexus was established. The affidavit includes facts supporting a fair probability Defendant would be involved in the sale of crack cocaine at this residence. Even if the affidavit does not establish Defendant *owned* the 1210 South Cedar residence, the facts do support a finding Defendant was steadily using this location to engage in drug trafficking.

The fact neither the informant nor law enforcement witnessed Defendant actually transferring the cocaine for money in the 1210 South Cedar residence does not negate probable cause. "Probable cause does not require that police officers actually observe a suspect committing a clearly illegal act." *United States v. Rodriguez*, 16 F.3d 1223 (Table) (6th Cir. Feb. 22, 1994) *available at* 1994 WL 54281 at *3. In light of all the circumstances surrounding the December 16 and 23 transactions alone, there was probable cause to believe Defendant was selling crack cocaine out of the residence

searched.

**C.    Dissipation of Probable Cause**

Defendant argues any probable cause supporting the issuance of the warrant on December 29, had dissipated prior to the execution of the search on December 31 in his amended motion to suppress (Court File No. 73).   The magistrate judge concluded due to the ongoing operations there still existed a fair probability other indicia of cocaine trafficking business would be present and probable cause remained intact despite the lack of cocaine on the premises the date the warrant was issued.  Defendant objects to the magistrate judge's findings "Johnson received new information that marijuana **was** on the premises" and that probable cause still existed on December 31, 2008, despite three occasions where officers knew there were no drugs at the 1210 South Cedar Avenue residence. Defendant also cites as error the magistrate judge's reliance on *United States v. Harris,* 255 F.3d 288 (6th Cir. 2001), and *United States v. Micou*, 48 F.3d 1220 (Table) (6th Cir. Mar. 8, 1995) (per curiam) *available at* 1995 WL 99168.

Based on Detective Johnson's testimony, he did have information Defendant would be obtaining "weed later" and he did follow Defendant to an apartment complex and back to the residence on South Cedar Avenue.   The context of the quoted language from the R&R was describing Defendant's argument that due to this new information, a new warrant should have been obtained (*see* Court File No. 77, p. 11 ("Thus, argues defendant, when Johnson received new information that marijuana was on the premises, Johnson was required under the Fourth Amendment to obtain a new search warrant . . .")).   Even if Detective Johnson did not have information the marijuana was in fact present, his testimony establishes he had a reasonable belief marijuana was present. Thus, Defendant's objection to the magistrate judge's description of his argument does not

negate a finding of probable cause.

To establish the constitutionality of a search, probable cause must support the warrant both at the time of its issuance and the time it is executed. *United States v. Bowling*, 900 F.2d 926, 932 (6th Cir. 1990). Between the issuance of the warrant and the execution on December 31, 2008, Defendant argues there were three occasions where the police determined there were no drugs at the South Cedar Avenue (Court File No. 78, p. 3). On one occasion, Detective Johnson describes a failed attempt to make arrangements to trade a pound of marijuana for an ounce of crack cocaine sometime between December 23 and December 29 (Johnson Trans. p. 46). The second occasion was the day the warrant was issued when an informant made contact with Defendant and determined "there was nothing going to be there" (*id.* at 50-51). Finally, Defendant points to the sequence of events on December 31, where police believe there might be marijuana arriving but it was not yet in the house (*id.* at 56-57).

The probable cause supporting the search warrant is not bound to a specifically designated collection of cocaine. The nature of drug trafficking and demand for product will undoubtedly result in times when a seller needs to obtain more inventory from suppliers to then turn around and sell. "Probable cause is not defeated simply because an informant was unable to purchase drugs on one occasion prior to the execution of a search warrant." *Harris*, 255 F.3d at 294. As in *Harris*, it is not as if the informant was told Defendant had ceased drug operations, or that the South Cedar residence was no longer used for these transactions only that "there was nothing going to be there" at a particular moment in time. Defendant attempts to distinguish *Harris*, arguing there were stronger facts supporting the informant's credibility, the defendant's residing at the home, and direct contact with the defendant himself than those presented here. As previously discussed, the Court finds the

reliability of informants and the nexus between Defendant and the South Cedar residence has been established.

Furthermore, in light of the ongoing nature of the investigation from April until December 2008, the multiple controlled purchases and the information detailed in Detective Johnson's affidavit, the warrant was supported by probable cause. Three occasions where information indicated there may not be drugs present in the residence do not negate the probable cause due to the continuous nature of drug trafficking. Similar to an argument raised in *United States v. Lattner*, 385 F.3d 947, 954 (6th Cir. 2004), Defendant contends any evidence of narcotics trafficking is negated when there are failed controlled purchases. In *Lattner*, the court notes this does not mean drugs will no longer be present at this location, rather the request to return later "means that while he was presently out of cocaine, he would have cocaine later." *Id.* at 954. In this case, Detective Johnson had information there would be "weed later," the warrant covered items beyond the actual cocaine itself, and it was reasonable to believe this paraphernalia, currency, etc. would continue to be on the premises even if the actual cocaine was not. Thus, the Court concludes probable cause had not dissipated by the three-day delay between the issuance and execution of the search warrant.

Finally, the Court determines the magistrate judge's reliance on *Micou* was not erroneous. In *Micou*, the court notes the obligation of officers to bring new information calling into question probable cause to the magistrate's attention, however, if the magistrate "would still have found probable cause to exist," then the "fruits of the warrant are not to be suppressed." *Micou*, 1995 WL 99168 at *3. The additional knowledge Defendant did not have drugs on December 29, but would have "weed later," as well as observation of the Defendant's travel to and from Chattanooga, would still result in a finding probable cause existed and therefore should not result in exclusion of the

evidence obtained.

**D.     Denial of *Franks* Hearing**

Defendant argues he is entitled to a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978) based on omitted information which evidences an intent to mislead.  Defendant contends these omissions essentially cause the term "controlled purchase" to become an intentionally false statement intended to mislead the court (Court File No. 69, p. 9).  The magistrate judge concluded a *Franks* hearing was unnecessary as Defendant failed to establish how these omissions were made with the intention of misleading.  The Court agrees with the magistrate judge and as discussed above, finds these arguments here are more appropriately aimed at establishing reasonable doubt in a trial than to negate the requisite probable cause for a search warrant.

Detective Johnson is not expected to include every piece of information gathered in the course of his investigation.  *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998).  A *Franks* hearing based on omitted information is less likely to be warranted than one based on affirmatively false information because  "an allegation of omission potentially opens officers to endless conjecture about investigative leads, fragments, or other matter that might, if included, have redounded to defendant's benefit."  *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997). As to Defendant's challenges to third-parties involved in purchases, inability to adequately observe the 1201 South Cedar residence, and tracking of currency, these pertain to the quality of the investigation  and not the establishment of probable cause.  *See Allen*, 211 F.3d at 976 ("while better investigative work is preferable to merely adequate investigation, it is not the constitutional measure of probable cause").

The Court finds the magistrate judge correctly determined a *Franks* hearing was not

warranted based on the controlling law.

## V.      CONCLUSION

For the reasons stated above, after carefully reviewing the documents presented to the magistrate judge, the Court has determined the magistrate judge's legal analysis is correct under the relevant law. Following those findings, the Court will **ACCEPT** and **ADOPT** the magistrate's determination evidence found during a search of Defendant's residence on December 31, 2008, need not be suppressed and a *Franks* hearing is not warranted.

An Order shall enter.

**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**