UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 1:09-CR-87 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| CHARLES GREEN ) | |

# **M E M O R A N D U M**

Before the Court is a motion for judgment of acquittal or new trial filed by Defendant Charles Green ("Defendant") (Court File No. 141).[1] The United States filed a response to this motion (Court File No. 146). For the reasons discussed below, Defendant's motion will be **DENIED**.

On September 28, 2010, a grand jury charged Defendant and his codefendant brother James Green in an eight-count Superseding Indictment (Court File No. 101). Defendant was charged with conspiracy to manufacture, distribute, and possess with intent to distribute cocaine base ("crack cocaine") and powder cocaine, four counts of distribution of crack cocaine, being a felon in possession of a firearm and ammunition, use and maintenance of a place for the purpose of manufacturing and distributing crack cocaine, and possession of a firearm in furtherance of a drug trafficking offense. Defendant's trial commenced on December 6, 2010, and lasted five non-consecutive days. On the fourth day of trial, the Court dismissed Count Eight, that is, the firearm-in-furtherance-of charge. On December 16, 2010, a jury found Defendant guilty on all remaining

---

[1] Defendant also filed a *pro se* motion for a new trial (Court File No. 144), as did his co-defendant brother James Green (Court File No. 145). However, both individuals are represented by counsel. Therefore, pursuant to Local Rule 83.4(c), the Court will disregard these motions.

counts except Count Three – one of the four distribution counts. At the close of the government's case in chief, defense counsel moved for judgment of acquittal on all counts under Rule 29 of the Federal Rules of Criminal Procedure. This motion was renewed at the close of all proof and denied. Defendant has now filed timely a motion for acquittal or a new trial.

## I. STANDARD OF REVIEW

### Rule 29 Motion for Judgment of Acquittal

In reviewing a challenge to the sufficiency of the evidence under Rule 29 of the Federal Rules of Criminal Procedure, the Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *United States v. Torres-Ramos*, 536 F.3d 542, 556 (6th Cir. 2008). A defendant challenging sufficiency of the evidence "bears a very heavy burden" and the same weight is afforded to both circumstantial and direct evidence. *United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010) (citations omitted). Defendant asserts the evidence is insufficient as a matter of law to sustain the convictions for the charged offenses.

### Rule 33 Motion for a New Trial

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The decision to order a new trial is committed to a court's sound discretion, which is subject to review for abuse. *United States v. Talley*, 164 F.3d 989, 1002 (6th Cir. 1999); *United States v. Davis,* 15 F.3d 526, 531 (6th Cir. 1994). In deciding whether a new trial is warranted, a court should primarily concern itself with whether

the prior proceedings were fair for the accused. *Talley*, 164 F.3d at 1002. Motions for new trials are not favored and should only be granted with great caution and in extraordinary circumstances. *United States v. Garner*, 529 F.2d 962, 969 (6th Cir. 1976); *United States v. Hoffa*, 382 F.2d 856, 862 (6th Cir. 1967). A defendant bears the burden of proving a new trial should be granted. *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991).

## II.　ANALYSIS

Defendant's argument, found in the memorandum in support of his motion for judgment or acquittal and new trial, is organized rather originally. It begins with a "factual background" section, listing twelve non-exclusive defects with the trial. However, the "argument" section is divided into only four headings, each discussing a different infirmity, throughout which various of the above-listed defects are interwoven. In other words, the argument does not proceed count-by-count to show the evidence was insufficient to sustain a guilty verdict, but highlights four main infirmities which call into question the overall sufficiency of the evidence, and the need for a new trial. For sake of clarity, the Court will adopt this organization structure in its analysis, discussing each of the alleged infirmities in turn.

### A.　Allowing Statements to be Admitted into Evidence via Audio Tapes was a Violation of the Defendant's Sixth Amendment Right of Confrontation.

At trial, a number of audio recordings captured through the use of wire-wearing confidential informants were entered into evidence. These recordings capture conversations and transactions involving confidential informants, the co-defendant, and other third parties. Defendant argues the admission of these recordings violated his Sixth Amendment right of confrontation, insofar as the government did not show the non-testifying "witnesses" whose voices were captured on the

recordings were unavailable, and Defendant was not afforded an opportunity to cross-examine them.

The Confrontation Clause of the Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, 541 U.S. 36, 59 (2004), the Supreme Court held "[t]estimonial statements of witnesses absent from trial [may be] admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." This rule was a departure from the one established in *Ohio v. Roberts*, 448 U.S. 56 (1980), which set judicial determinations of "indicia of reliability" as the touchstone of Confrontation Clause admissibility. *See id*. at 66. Under post-*Crawford* jurisprudence, the "testimonial/non-testimonial" distinction is now the touchstone of Confrontation Clause admissibility:

> Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law . . . as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination. . . . Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation.

*Crawford*, 541 U.S. at 68-69. Although *Crawford* did not provide a comprehensive definition of "testimonial," it did favorably cite some formulations of "core" classes of testimonial statements: "*ex parte* in-court testimony or its functional equivalent – that is, material such as affidavits, custodial examinations, prior testimony . . . or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id*. at 51-52 (citations omitted). Furthermore, the *Crawford* court reiterated that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than

4

establishing the truth of the matter asserted." *Id*. at 59 n.9.

Later cases have applied *Crawford* to specific fact patterns, providing further guidance on how courts are to determine which statements are testimonial and which are not. In *Davis v. Washington*, 547 U.S. 813 (2006), the Supreme Court considered whether statements made to law enforcement personnel during a 911 call or at a crime scene are testimonial. As in *Crawford*, the court declined to give an "exhaustive classification of all conceivable statements," but nonetheless did offer some clear guidance:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis*, 547 U.S. at 822. More recently, when considering the testimonial character of statements made by a dying man being questioned by the police, the Supreme Court stated "the most important instances in which the [Confrontation] Clause restricts the introduction of out-of-court statements are those in which state actors are involved in a formal, out-of-court interrogation of a witness to obtain evidence for trial." *Michigan v. Bryant*, No. 09-150, 2011 WL 676964, *9 (U.S. Feb. 28, 2011).

Here, none of the recordings admitted into evidence violated Defendant's Sixth Amendment right to confrontation. As a threshold matter, the great majority of the recordings do not even raise the possibility of a Confrontation Clause issue, insofar as they contain the conversations of individuals who do not know they are being recorded. It is axiomatic one who is participating in a drug transaction, completely unaware of any police surveillance, does not reasonably expect his statements to be used in a prosecution. *See Crawford*, 541 U.S. at 68; *United States v. Johnson*, 581

F.3d 320, 325 (6th Cir. 2009) ("[A] statement unwittingly made to a confidential informant and recorded by the government is not 'testimonial' for Confrontation Clause purposes.") (quoting *United States v. Watson*, 525 F.3d 583, 589 (6th Cir. 2008)).

Statements in the recordings made by the wire-wearing confidential informants are another matter. The Sixth Circuit has held "statements by a confidential informant are 'testimonial' and thus, subject to the Confrontation Clause." *United States v. Deitz*, 577 F.3d 672, 683 (6th Cir. 2009) (quotation omitted). This rule, however, "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59 n.9. Here, Defendant has not identified any particular recorded statements uttered by confidential informants that were for the purpose of establishing the truth of the matters asserted. Rather, the confidential informant's statements primarily serve to provide background and context to the recordings.

"Evidence that is provided merely by way of background or is offered only to explain how certain events came to pass or why the officers took the actions they did is not offered for the truth of the matter asserted." *United States v. Brazil*, 395 F. App'x 205, 218 (6th Cir. 2010) (quotation omitted). Most of the confidential informants' recorded utterances were made during the course of conversations with co-conspirators, including the co-defendant, and provide context for those individuals' statements. *See United States v. Jones*, 205 F. App'x 327, 342 (6th Cir. 2006) (holding recordings of controlled drug buys between a defendant and a confidential informant did not violate the Confrontation Clause because the confidential informant's recorded statements were not offered for the truth of the matters asserted, but to give meaning to the admissible responses of the defendant). As such, the admission of these statements did not violate Defendant's Confrontation Clause rights. Any statements by confidential informants falling outside this purpose, of which

6

Defendant has not identified any, were *de minimis*, and ultimately harmless considering the extensive evidence, including admissible evidence from the recordings as well as in-court testimony, showing Defendant sold and conspired to sell cocaine from his residence. *See United States v. Sutton*, 387 F. App'x 595, 603 (6th Cir. 2010) (finding even if some of an informant's recorded statements violated the Confrontation Clause, the error was harmless in light of incriminating testimony at trial and other wiretap evidence); *United States v. Gibbs*, 605 F.3d 479, 486 (6th Cir. 2007).

Defendant also asserts his right to confrontation was violated by the in-court testimony of Laura Henry. Defendant claims Ms. Henry only parroted police-prepared transcripts of the recordings, and therefore was not able to respond adequately to Defendant's questions during cross-examination, effectively denying Defendant's right to confrontation. This argument is without merit. The Federal Rules of Evidence permit the use of a writing to refresh the memory of a testifying witness. Fed. R. Evid. 612. This same rule permits the adverse party to inspect the writing, introduce parts of it into evidence, and, most importantly, cross-examine the witness thereon. *Id*. If, in fact, Ms. Henry was simply parroting transcripts of the recording and did not herself possess memories of the testified-to events, which the record does not indicate, Defendant's cross-examination of Ms. Henry would have been the prime opportunity to bring this to the jury's attention by impeaching her credibility. This Court is aware of no precedent, and Defendant cites none, finding refreshing a witness's recollection pursuant to Rule 612 creates a Confrontation Clause problem. *Cf. Delaware v. Fensterer*, 474 U.S. 15, 21-22 (1985) ("The Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion. To the contrary, the Confrontation Clause

is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony.").

Additionally, Defendant argues his right to confrontation was violated by being "denied the right" to cross examine all of the parties to whom he allegedly supplied cocaine. However, the Confrontation Clause affords Defendant no such right. The Confrontation Clause secures a defendant's right to confront all "witnesses against him;" it does not entitle a defendant to confront non-testifying individuals with whom he has allegedly transacted. Defendant has identified no testimonial statements by the individuals he allegedly supplied cocaine to, thus his invocation of the Confrontation Clause is improper. Insofar as Defendant may be claiming his Sixth Amendment rights were violated because not everyone involved in the chain-of-custody of the drugs he allegedly sold actually testified, this argument also is without merit. The Sixth Amendment does allow defendants to confront forensic examiners whose identification of a substance as drugs would be used at trial. *See Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009). However, this rule is a function of the *testimonial character* of a forensic examiner's identification of a substance as drugs. The same testimonial character does not adhere to a middleman's acts of purchasing and re-transmitting drugs. In other words, "[g]aps in the chain of custody . . . go to the weight, not the admissibility of evidence, and the Confrontation Clause would not be implicated in such an argument." *United States v. Butler*, 137 F. App'x 813, 819 n.3 (6th Cir. 2005). Consequently, Defendant's right of confrontation was not violated by the absence of certain parties who formed

8

some link in the chain-of-custody of the drugs admitted at trial.[2]

### B. Denial of the Motion to Suppress and Corresponding Request for a *Franks* Hearing

Defendant argues evidence obtained from the search of his home should have been suppressed, and a *Franks* hearing held. This issue has already been litigated as a motion to suppress prior to trial. The Court, after a *de novo* review, overruled Defendant's objections and issued an order adopting the magistrate judge's reports and recommendations, and denying Defendant's motion to suppress (Court File No. 82). The Court reviewed the evidence from the suppression hearing and the relevant law and concluded Detective Johnson's affidavit established reasonable grounds for belief Defendant was engaged in criminal activity at his residence. With respect to a *Franks* hearing, the Court concluded the "omissions" pointed to by Defendant were not made with intent to deceive. As the Court put it at that time, Defendant's arguments that information was left out of the affidavit "are more appropriately aimed at establishing reasonable doubt in a trial than to negate the requisite probable cause for a search warrant" (Court File No. 81, p. 20).

The Court's ruling on the motion to dismiss has now become the law of the case and "as a rule[,] courts should be loathe to [revisit prior decisions] in the absence of extraordinary circumstances." *United States v. Garcia*, 496 F.3d 495, 514 (6th Cir. 2007). The law-of-the-case doctrine refers to "the practice of courts generally to refuse to reopen what has been decided." *Christianson v. Colt Indus. Oper. Corp.,* 486 U.S. 800, 817 (1988). Nothing that occurred during the course of trial is sufficient to cause the Court to revisit its prior decision on this matter.

---

[2]Moreover, extensive chain-of-custody testimony was heard at trial, including testimony from Detective Johnson, Mr. Cummings, and Ms. Henry, which was sufficient to support a finding that the cocaine admitted into evidence was obtained from Defendant. *See* Fed. R. Evid. 901(a).

Testimony from Detective Johnson, Mr. Cummings, and Ms. McFarland only bolstered the Court's earlier finding that there was probable cause for the search warrant to issue. Specifically, Detective Johnson described his orchestration of numerous controlled purchases from Defendant, Mr. Cummings testified about his participation in a controlled purchase involving co-conspirator "Bubba Sudds," and Ms. McFarland testified she had bought crack cocaine from Defendant at his residence on many occasions. Any inconsistencies between their testimony and the affidavit were negligible, do not affect the determination that the warrant was supported by ample probable cause, and do not lead the Court to conclude the affidavit was made with intent to deceive. Rather, these issues, such as they are, were "more appropriately aimed at establishing reasonable doubt" at trial. Accordingly, the Court re-affirms its earlier order denying the motion to suppress and motion for a *Franks* hearing.

## C. Recordings and Transcripts

Defendant claims the Court failed to make a preliminary finding that the recordings in this matter were authentic, accurate, trustworthy and sufficiently audible for the jury to consider the contents. Additionally, Defendant objects to the jury's viewing of transcripts while they listened to the tapes being played in Court. These arguments are without merit.

"The admission at trial of tape recordings rests with the sound discretion of the trial court." *United States v. Robinson*, 707 F.2d 872, 876 (6th Cir. 1983). "As a prerequisite to admission, the tapes must be authentic, accurate and trustworthy . . . [and] they must be audible and sufficiently comprehensible for the jury to consider the contents." *Id*. In this case, the prosecution laid a foundation for the recordings by eliciting testimony from Detective Johnson regarding the functioning of the recorder, recovery of the recordings, and their custody. This was sufficient to

establish the recordings – which, by the way, were plainly audible and comprehensible – as authentic. Moreover, at no point has Defendant raised indicia of fraudulence, inaccuracy, or untrustworthiness of the recordings, or contended the recordings were inaudible. Accordingly, the Court concludes it was not error to admit the recordings.

As with tape recordings, "the use of a transcript of a recorded communication during trial is within the sound discretion of the trial court." *United States v. Wilkinson*, 53 F.3d 757, 761 (6th Cir. 1995). The transcript itself is not evidence – as the Court clearly instructed the jury in the present case[3] – but merely something to aid the jury as it listens to recordings, which are, in fact, evidence. *See United States v. Scarborough*, 43 F.3d 1021, 1024 (6th Cir. 1994). Here, Defendant has pointed to no specific inaccuracies in the transcript. Nor does he suggest he was denied an opportunity to challenge the accuracy of the transcripts at trial. The Court concludes it was operating within its discretion in allowing the jury to use transcripts, and the use of the transcripts neither undermines the sufficiency of the evidence nor counsels for a new trial.

### 4. The Improper Shifting of the Burden in the Government's Closing Arguments and the Improper Actions of the Government Agents

In his fourth argument, Defendant lists several purported instances of improper conduct by the government. While Defendant does not explicitly say so, the Court understands Defendant's argument to be that these instances so undermined the fairness of the trial that Defendant should be granted a new trial. The Court disagrees.

Defendant first argues the prosecutor "attempted to shift the burden of proof" during closing arguments by telling the jury that the defense had equal access to certain witnesses and that if they

---

[3]Additionally, the Court did not allow the jury to remove the transcripts to the deliberation room.

would be helpful to the defense it was the defense's responsibility to call them. The Court disagrees that this was an attempt to "shift the burden of proof" to Defendant. The prosecutor's remarks were made in response to the defense's earlier insinuation that the government was "hiding" defense-favorable facts from the jury by only playing selected parts of the recordings, and by not calling certain individuals as witnesses. The prosecutor pointed out that Defendant has the ability to play any portion of the recordings he wishes, and to subpoena people to testify who he believes will be helpful to him, and it is not the government's responsibility to call defense-favorable witnesses. The prosecutor did not at all insinuate Defendant's decision not to call witnesses implied guilt, nor did he try to muddle the jury's understanding of who bore the burden of proof in the case. However, even if the prosecutor's remarks were improper in some way, which they were not, they were nonetheless fleeting, and wholly cured by the Court's clear instructions to the jury that the prosecution bears the burden of proof, Defendant is presumed innocent until proven guilty, and Defendant is not required to put on any evidence.

Defendant next asserts the government "improperly elicited preemptive testimony from its witness on direct indicating that at least one of those [individuals who were not called as witnesses] was believed to be out of state." Defendant does not discuss this alleged impropriety in any more detail, and the Court is unsure of what particular instance Defendant is referring to, and what was ostensibly "improper" about this exchange. At any rate, this incident, apparently minor enough for Defendant to neglect to even state which witness he is referring to, certainly did not so undermine the fairness of the trial that a new trial is called for.

Finally, Defendant objects to the "seemingly intentional introduction of prejudicial hearsay regarding conversations with the alleged supplier of the drugs known as Doughnut." Once again,

Defendant does not identify the witness to which he refers, nor give more than a cursory explanation of this allegedly prejudicial impropriety. The Court presumes Defendant is referring to an exchange that occurred when Detective Johnson was on the stand. The Court disagrees with Defendant's characterization of this exchange as "seemingly intentional introduction of prejudicial hearsay." It was defense counsel, not the government, who asked Detective Johnson what evidence he had gathered to support the fact that there were drug transactions between Defendant and Doughnut. Detective Johnson responded forthrightly to this question by saying he had just interviewed Doughnut a few days ago. Detective Johnson appeared about to testify as to what Doughnut had told him, when defense counsel cut him off, stating any further response would be hearsay. The record is devoid of any further statement by the witness relaying what Doughnut had told him in the interview. Nothing in this exchange indicates intentional, improper, prejudicial activity by the government. More fundamentally, nothing in this exchange constitutes *hearsay*, insofar as Detective Johnson never actually repeated what Doughnut had told him. It is tautological that the government does not intentionally introduce prejudicial hearsay when no hearsay is in fact introduced. Moreover, even if hearsay could somehow be conjured out of this fleeting exchange, Defendant does not claim he objected to it, nor that the Court overruled his objection. At any rate, if there was any impropriety in this exchange, it was vanishingly small, and does not warrant the extraordinary relief of a new trial.

### III. CONCLUSION

Because Defendant has not shown the evidence was insufficient to support a guilty verdict on any of the Counts, the Court will **DENY** his motion for judgment of acquittal (Court File No.

141). Additionally, none of the other grounds raised by Defendant demonstrates that a new trial is warranted in the interests of justice. Accordingly, the Court finds no basis for vacating the jury's verdict and ordering a new trial and will **DENY** Defendant's alternative motion for a new trial (Court File No. 141).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**