# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| CHARLES E. GREEN, ) | |
| ) | Case Nos. 1:09-cr-87, 1:15-cv-156 |
| *Petitioner*, ) | |
| ) | Judge Travis R. McDonough |
| v. ) | |
| ) | Magistrate Judge Christopher H. Steger |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| *Respondent*. ) | |

## MEMORANDUM OPINION

On April 29, 2011, Petitioner Charles Green ("Green") was sentenced to a term of imprisonment of 168 months, eight years of supervised release, and a $600 special assessment[1] [Doc. 159]. Following Green's direct appeal, the Sixth Circuit affirmed the judgment on February 13, 2014 [Doc. 191]. On June 18, 2015, Green filed the present Motion to Vacate under 28 U.S.C. § 2255 [Doc. 197].[2]

For the reasons that follow, the Court finds that an evidentiary hearing is not necessary, and Green's § 2255 Motion [Doc. 197] shall be **DENIED**.

## I.  Facts

In April 2008, the Marion County Sheriff's Department began investigating Green on allegations that he was involved in drug trafficking in South Pittsburg, Tennessee.[3] By utilizing

---

[1] Green later received a reduction in his sentence from 168 months to 137 months under 18 U.S.C. § 3582(c)(2) [Doc. 217].

[2] All citations to the district-court record are to 1:09-cr-87, which is the underlying criminal case.

[3] At that time, Green had three prior Tennessee drug-trafficking convictions and a prior federal firearm conviction.

two confidential informants who made controlled purchases from Green, officers discovered that Green was selling crack cocaine out of his residence.

After making the controlled purchases, officers obtained a search warrant for Green's residence in December 2008. The warrant permitted them to search Green's home and any persons found there for "crack cocaine, powder cocaine, evidence of crack cocaine manufacturing, scales, smoking pipes, packaging, baggies, other weighing devices, bills, invoices, labels, mail receipts, and other similar records, U.S. currency, phone and banking records, and any other written memorandum relating to the trafficking and manufacturing of crack cocaine." [Doc. 53].

The officer intended to execute the warrant on the same day that he obtained it; however, he elected not to do so when an informant reported that Green did not have any drugs on hand that day. The informant later went to Green's house to see if Green had restocked the drugs. Green told the informant that he "would have some weed later" and left in his car to drive to Chattanooga [Doc. 72 at PageID# 312]. Officers surveilled Green as he stopped at a Chattanooga apartment, went inside, returned to his car, and drove back to his residence in South Pittsburg. Upon arrival, officers detained him and executed the warrant.

Searching Green's home, officers found a loaded .38 caliber revolver inside a pouch hanging in Green's bedroom closet, a box with several rounds of .38 caliber ammunition, eleven grams of marijuana, and electronic scales. They also found $1,800 in Green's pockets. Officers informed Green of his *Miranda* rights. Green voluntarily waived those rights and spoke with the officers. Green explained that he drove to the Chattanooga apartment to meet with his cocaine supply source and to give him a $2,000 down payment for a four-ounce cocaine transaction that Green had planned for that evening. When asked about the revolver found in his

closet, Green claimed ownership and explained that he carried it bow hunting [Doc. 176 at PageID# 1418].

Officers arrested Green. He was arraigned on June 5, 2009, and pled not guilty [*See* Doc. 14]. During the pretrial proceedings, Green filed a motion to suppress the evidence found in his residence as well as his statements to officers. Green argued that the search warrant violated Rule 41(b); that probable cause did not support the warrant; and that the search exceeded the scope of the warrant. Green then amended his motion to suppress, requesting a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), due to alleged material omissions in the warrant. The magistrate judge recommended that Green's suppression motion be denied because probable cause supported the warrant and the search did not exceed its scope [Doc. 68]. The magistrate judge also determined that Green was not entitled to a *Franks* hearing because he failed to make a preliminary showing that the alleged omissions in the warrant affidavit were intended to mislead the issuing judge [*Id.*]. The magistrate judge reserved ruling on the Rule 41(b) issue to conduct an evidentiary hearing [*Id.*].

At the evidentiary hearing, the officer testified that he delayed executing the search warrant until he "had new information not contained in the [ ] warrant." [Doc. 72 at PageID# 312]. In light of that admission, the magistrate judge permitted Green to amend his motion to suppress again to include the claim that probable cause was extinguished between the warrant's issuance and execution [*See* Doc. 73].

The magistrate judge recommended that Green's second amended motion to suppress be denied [Doc. 77]. In noting that the warrant would have been issued regardless of Rule 41's requirements, the magistrate judge concluded that the exclusionary rule did not apply to the evidence discovered at Green's residence [*Id.*]. The magistrate judge next found that probable

3

cause had not been extinguished prior to the warrant's execution [*Id.*]. Even though the informant notified the officers that Green did not have cocaine at his residence, probable cause supported the warrant at its execution since "the house was used in ongoing drug trafficking and law enforcement received additional information that more drugs would be coming into the house later and because the warrant covered more than just drugs." [*Id.* at PageID# 376]. Green accepted the magistrate judge's conclusions on the Rule 41 issue but objected to the findings that the officers did not exceed the warrant's scope and that probable cause still existed at the time the officers executed the warrant [Doc. 78]. The district judge overruled Green's objections and adopted the report and recommendation [Doc. 82].

Before trial, the grand jury issued a superseding indictment that charged Green with eight offenses, *to wit*, one count of conspiring to distribute at least five grams of crack cocaine and at least 500 grams of cocaine hydrochloride, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(B) (Count One); four counts of distributing crack cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Counts Two through Five); one count of possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1) (Count Six); one count of maintaining a residence for the purpose of distributing crack cocaine, in violation of 21 U.S.C. § 856(a)(1) (Count Seven); and one count of possessing a firearm in furtherance of a drug-trafficking offense, in violation of 18 U.S.C. § 924(c) (Count Eight).

At trial and before submitting the case to the jury, Green moved for a directed verdict on the charge of possessing a firearm in furtherance of a drug-trafficking crime (Count Eight). The district court granted Green's motion, noting that officers found the revolver inside hunting gear and that Green told the officers he carried the revolver while hunting to protect himself from

4

wild animals. The court then submitted the remaining charges to the jury, which found Green guilty of every count except Count Three, distribution of crack cocaine [Doc. 134].

At sentencing, the probation officer, based on Green's admissions regarding the amount of purchased cocaine, concluded that Green was responsible for the equivalent of 2.5 kilograms of powder cocaine. Thus, under U.S.S.G. § 2D1.1(c)(6), the probation officer assigned Green a base offense level of 28. The probation officer then applied a two-level enhancement under § 2D1.1(b)(1) because Green possessed a firearm within the residence where he was selling crack cocaine. The resulting total offense level of 30, combined with Green's criminal history of category IV, yielded an advisory guideline range of 135 to 168 months of imprisonment. Green objected to the application of the two-level dangerous weapon enhancement, but the district court overruled his objection [Doc. 159]. The district court found that the Government met its burden of demonstrating that Green possessed the gun and concluded that Green had failed to show that it was clearly improbable that the weapon was connected to his drug-trafficking offenses. *Id.*; *see United States v. Climer*, 591 F. App'x 403, 412 (6th Cir. 2014) (noting that the two-level enhancement should be applied "unless it is clearly improbable that the weapon was connected to the offense.") (quoting USSG § 2D1.1(b)(1)).

Green then appealed to the Sixth Circuit, arguing "that the district court erred in finding probable cause had not dissipated between the time the search warrant was issued and the time that it was executed." *United States v. Green*, 554 F. App'x 491, 495 (6th Cir. 2014). Specifically, Green asserted that "the search warrant lacked probable cause at the time it was executed because [the officer] learned from an informant that Green would not have any cocaine on the day [the officer] originally intended to execute the search warrant." *Id.* at 496. In other words, Green believed that, when the informant notified the officer that "marijuana would be on

5

the premises, the Fourth Amendment required that [the officer] report that new information to the issuing magistrate. Because [the officer] failed to do so, Green argue[d] the district court should have suppressed the evidence found during the search of his home." *Id*. The appeals court rejected that argument, stating that "probable cause still existed despite the informant's statement that cocaine was not on the premises." *Id.* at 496.

Green also contended that the district court erred by finding that the marijuana found during the search did not exceed the warrant's scope. *Id.* at 495. The appellate court noted that Green waived that argument since he "never argued to the district court that the seizure of marijuana exceeded the scope of the warrant . . . ." *Id.* at 497. That said, the appellate court also noted that, even if Green had not waived the argument, the "officers were permitted to seize the marijuana under the plain[-]view doctrine . . . ." *Id*.

The Sixth Circuit likewise rejected Green's assertion that his incriminating statements to officers constituted "fruit of the poisonous tree" and held that his Fourth Amendment rights were not violated. *Id.* at 497-98.

Finally, Green argued that the district court erred by increasing his base offense level under § 2D1.1(b)(1), which provides for a two-level increase "[i]f a dangerous weapon (including a firearm) was possessed" during the commission of a drug offense. *Id.* at 498. At trial, the district judge granted Green's directed verdict, holding that no reasonable jury could find that he possessed a firearm in furtherance of a drug-trafficking offense under 18 U.S.C. § 924(c). Despite dismissing this count, the district judge applied the two-level increase at sentencing due to the gun's presence in Green's home. *Id*. The Sixth Circuit affirmed, noting that the enhancement was proper given the Government's lesser "preponderance of the evidence" burden at that stage of the proceedings. *Id.* at 498-99.

In sum, the Sixth Circuit affirmed the judgment of the district court in all respects. *Id.* at 499. Notably, Green did not contest on appeal the district court's remaining findings from his motion to suppress, *to wit*, that "the warrant was supported by probable cause . . .; that it was not obtained in violation of Rule 41; or that he was not entitled to a *Franks* hearing." *Id*. The appellate court stated that Green waived those arguments on appeal since he failed to raise them at the trial court level. *Id.* (referencing *United States v. Anderson*, 695 F.3d 390, 402 (6th Cir. 2012)).

Green filed the present § 2255 Motion on June 18, 2015, contending that his attorney was constitutionally ineffective for: (1) failing to raise and preserve a claim that the search exceeded the scope of the search warrant; (2) failing to object to the magistrate judge's finding that he was not entitled to a *Franks* hearing [Doc. 197, PageID #: 1814]; (3) failing to call certain witnesses; (4) failing to seek a mistrial when the Government referenced his criminal history during opening statements [*Id.* at PageID #: 1815]; and (5) failing to interview witnesses and adduce evidence to overcome the application of the two-level enhancement [*Id.* at PageID #: 1817].

II.     Analysis

    A.     **Section 2255 standard to obtain post-conviction relief**

A prisoner who seeks to vacate his sentence under § 2255 must show that the sentence imposed by the Court violated the Constitution or laws of the United States, that the court was without jurisdiction to impose such sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. 28 U.S.C. § 2255. To prevail on a § 2255 motion "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005)

(quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)).

But non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). In fact, a petitioner can prevail alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotations omitted)).

In general, claims not raised on direct appeal are procedurally defaulted and may not be considered on collateral review unless the petitioner shows either: (1) "cause" and "actual prejudice"; or (2) "actual innocence." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 621–22 (1998); *United States v. Frady*, 456 U.S. 152, 167–68 (1982). But an ineffective-assistance-of-counsel claim is not subject to the procedural-default rule and is thus proper in a § 2255 collateral proceeding. *Massaro*, 538 U.S. at 504. Rule 4(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts requires courts to dismiss a § 2255 petition if "it plainly appears from the face of the motion, the attached exhibits, and the record of the prior proceedings that the movant is not entitled to relief." *See also Pettigrew v. United States*, 480 F.2d 681, 684 (6th Cir. 1973) ("A motion to vacate sentence under § 2255 can be denied for the reason that it states 'only bald legal conclusions with no supporting factual allegations.'") (quoting *Sanders v. United States*, 373 U.S. 1, 19 (1963)).

If the Court does not dismiss the motion under Rule 4(b), Rule 8 requires the Court to examine the record and determine the necessity of an evidentiary hearing. If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth

of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not necessary "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine*, 488 F.3d at 333 (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

> **B.** **Petitioner must satisfy both prongs of the *Strickland* test to obtain relief for ineffective assistance of counsel under § 2255**

When a petitioner seeks relief under § 2255 for ineffective assistance of counsel, he bears the burden of proving by a preponderance of the evidence that his counsel was deficient. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). That is, a petitioner must prove both deficient performance and prejudice to assert an ineffective-assistance-of-counsel claim. *Strickland v. Wash.*, 466 U.S. 668, 687 (1984). Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. 466 U.S. at 697.

For a petitioner to prove deficient performance, he must show "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 688. But a petitioner is not permitted to second-guess trial counsel's strategic decisions. *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002). Thus, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotations omitted). After all, "[a] fair assessment of attorney performance requires that every effort [be] made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the

9

time." *Id.* Deficient performance is only constitutionally prejudicial when "counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687. In demonstrating prejudice, a petitioner likewise "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Id.* at 695.

In this case, Green outlines various reasons as to why his attorney was constitutionally deficient [Doc. 197, PageID #: 1814-17]. Each of these reasons will be discussed below.

### 1. Counsel's failure to object that marijuana was beyond the scope of the warrant

Green initially faults his trial counsel for an alleged failure to raise an argument that the search exceeded the scope of the warrant [Doc. 197 at PageID #: 1814]. The Government responded that Green's trial counsel was not deficient because he did in fact raise the issue that the search exceeded the scope of the warrant [Doc. 199, PageID #: 1832]. In reviewing the prior proceedings, it does appear that Green's counsel argued at the district court level— and on appeal—that the cash, ammunition, and firearm found in the search exceeded the scope of the warrant. *United States v. Green*, No. 1:09-CR-87, 2010 WL 3398141, at *5 (E.D. Tenn. Aug. 26, 2010). However, as the Sixth Circuit noted on direct appeal, "Green argue[d] for the first time . . . that the search of his residence exceeded the scope of the warrant because the officers found and seized marijuana, as opposed to cocaine." *Green*, 554 F. App'x at 497. The appellate court further held that since "Green never argued to the district court that the seizure of the marijuana exceeded the scope of the warrant . . . he has waived [that] argument." *Id*. Consequently, the

10

Court interprets Green's assertion of a deficiency on the part of his lawyer as referring to his attorney's failure to object at trial that the seizure of marijuana exceeded the scope of the warrant [*See* Doc. 197 at PageID #: 1814].

When the underlying issue relating to ineffective assistance is a Fourth Amendment challenge, a petitioner must show that the "Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). With respect to Green's appeal, the Sixth Circuit held that, even if Green had objected during his trial that the marijuana exceeded the scope of the warrant, "it would [have] fail[ed] because officers were permitted to seize the marijuana under the plain[-]view doctrine: officers were lawfully present at Green's residence, they had a lawful right to access the marijuana while searching for evidence of cocaine manufacturing, and marijuana's incriminating character was immediately apparent." *Id.* (referencing *United States v. Garcia*, 496 F.3d 495, 512 (6th Cir. 2007).

Therefore, Green cannot demonstrate that counsel's failure to object at the district court level to seizure of marijuana would have resulted in a different outcome in his case. The Sixth Circuit specifically pointed out that the result would have been the same. *See Strickland*, 466 U.S. at 687; *see also Engle v. Isaac*, 456 U.S. 107, 134 (1982) (observing that "the Constitution guarantees criminal defendants a fair trial and a competent attorney [but] does not [ensure] that defense counsel will . . . raise every conceivable constitutional claim").

### 2. Counsel's failure to request a *Franks* hearing

Green also argues that his counsel was ineffective because he "failed to seek a *Franks* hearing." This argument is without merit because Green's counsel did, in fact, request a *Franks*

11

hearing [Doc. 197, PageID #: 1814]. Green's counsel argued that Green was "entitled to a hearing under *Franks* . . . based on omitted information which evidences an intent to mislead. Defendant contends these omissions essentially cause the term 'controlled purchase' to become an intentionally false statement intended to mislead the court." *Green*, 2010 WL 3398141, at *11. The magistrate judge and the district judge agreed that "a *Franks* hearing was unnecessary as [Green] failed to establish how these omissions were made with the intention of misleading." *Id*. Making a cogent but unsuccessful argument does not amount to ineffective assistance of counsel. *Accord United States v. Samuels*, No. 08-CV-0677-CVE-FHM, 2009 WL 3756556, at *10 (N.D. Okla. Nov. 6, 2009) ("The Court has not found any authority suggesting that [ ] counsel is constitutionally ineffective for asserting unsuccessful arguments on appeal and, even if appellate counsel were ineffective, it is not clear how asserting unsuccessful arguments causes any prejudice to a defendant.").

### 3. Counsel's alleged failure to request a mistrial

Next, Green alleges that his attorney was ineffective because he did not seek sanctions, including a mistrial, when the Government referenced his criminal history during opening statements [Doc. 197, PageID #: 1815]. This argument is without foundation because Green's attorney did, in fact, request a mistrial [*See* Doc. 173, 52-53]. Green's counsel was not deficient in the manner alleged by Green. *See Strickland*, 466 U.S. at 689 (noting the court's "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . .").

### 4. Counsel's failure to call witnesses identified by Green

Green argues that his attorney was ineffective because he failed to call certain witnesses identified by Green. More specifically, Green contends that his attorney "failed to call witnesses

[Green] identified to him and to adduce evidence in his possession showing that [Green] was not in the area on the date some of the alleged transactions occurred . . . " [Doc. 197, PageID #: 1815]. But "defense counsel has no obligation to call or even interview a witness whose testimony would not have exculpated the petitioner." *Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004). The failure of an attorney to present potentially exculpatory evidence will not automatically be considered deficient where tactical or other reasonable considerations justify that decision. *Caldwell v. Lewis*, 414 Fed. Appx. 80, 815-16 (6th Cir. 2011) (citing *Pavel v. Hollins*, 261 F.3d 210, 220 (2nd Cir. 2001)). Counsel's decision in this case not to call certain witnesses or present certain evidence can be considered "trial strategy," *Strickland*, 466 U.S. at 689, and is not tantamount to ineffective assistance of counsel. *See Wiley v. Hurley*, 2006 WL 1132960, at * 5 (S.D. Ohio Apr. 25, 2006) ("Courts are reluctant to find . . . an attorney has been ineffective for failing to call a witness, because it is difficult to show . . . a witness's testimony could have changed the outcome of the trial"). Petitioner's argument fails.

### 5. Counsel's failure to challenge a two-level enhancement to his sentence

Green argues that his counsel failed to challenge a two-level enhancement for possessing a firearm in connection with a drug offense. More specifically, Green asserts that "[t]rial counsel failed to interview witnesses and adduce evidence to rebut the presumption in the Guidelines that the firearm was in furtherance of drug trafficking." [Doc. 197, PageID #: 1817]. Section 2D1.1 of the United States Sentencing Guidelines provides for a two-level sentencing enhancement "[i]f a dangerous weapon (including a firearm) was possessed" in connection with a drug offense. United States Sentencing Comm'n, Guidelines Manual § 2D1.1(b)(1). The comment to the guideline notes that "[t]he enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons." *Id.* §

2D1.1 cmt. 11A (2014). "The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.*

To apply the enhancement, the Government must establish "by a preponderance of the evidence that (1) the defendant actually or constructively possessed the weapon, and (2) such possession was during the commission of the offense." *United States v. Climer*, 591 F. App'x 403, 412–13 (6th Cir. 2014) (quoting *United States v. Greeno*, 679 F.3d 510, 514 (6th Cir.2012)). A defendant has constructive possession of a firearm when he has "ownership, or dominion or control over the item itself, or dominion over the premises where the item is located." *United States v. Howard*, 570 F. App'x 478, 481 (6th Cir. 2014). If the Government satisfies its burden, the defendant must then demonstrate that it was clearly improbable that the weapon was "connected to the offense." *Climer*, 591 F. App'x at 413. Green argues that, if his attorney had interviewed additional witnesses and presented new evidence, then he could have shown that it was clearly improbable that the firearm was in furtherance of a drug-trafficking offense [*See* Doc. 197, PageID #: 1817].

But "whether to call a witness . . . [is a] classic question[ ] of trial strategy that merit[s] *Strickland* deference." *Rayborn v. United States*, 489 Fed.Appx. 871, 878 (6th Cir. 2012). Because "[t]he burden rests on the defendant to overcome the presumption that the challenged conduct might be considered sound trial strategy," *id.*, Green must establish that the failure to call witnesses was not sound trial strategy. Aside from conclusory allegations, Green has failed to identify how he was prejudiced by counsel's failure to call additional witnesses or present further evidence. *See Wiley*, 2006 WL 1132960, at * 5.

Beyond that, Green cannot use his § 2255 Motion to contest the enhancement after this issue was already argued before the trial court and on direct appeal. A "§ 2255 motion may not

14

be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances." *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) (internal citations omitted); *accord Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999).

Green's attorney argued that, because his motion for directed verdict was granted on the 18 U.S.C. § 924(c) charge, it was "clearly improbable that [Green] possessed the [firearm] during the commission of any drug[-]trafficking offense." *Green*, 554 F. App'x at 498. Rejecting this argument, the district court applied the two-level enhancement, noting that the Government met the lesser preponderance-of-the-evidence standard. The Sixth Circuit affirmed this decision, holding that even though "no reasonable jury could find that Green possessed a firearm in furtherance of a drug-trafficking offense beyond a reasonable doubt, the district court could have logically found that Green possessed a gun during the commission of his drug trafficking offenses by a preponderance of the evidence." *Id.* at 499. While Green disagrees with the appellate court's finding, he has not presented "highly exceptional circumstances" to revisit this issue through a § 2255 motion. *See DuPont*, 76 F.3d at 110. And Green "cannot use a § 2255 proceeding in the guise of ineffective assistance of counsel to relitigate issues decided adversely to him on direct appeal." *Clemons v. United States*, 2005 WL 2416995, at *2 (E.D.Tenn. 2005) (citing, *see e.g., DuPont*, 76 F.3d at 110). In short, Green's counsel cannot be found ineffective for failing to raise an issue that he did in fact raise at both the district court and appellate court levels. *See Samuels*, 2009 WL 3756556, at *10.

C. **Request for Evidentiary Hearing**

Upon review of the entire record, the Court finds that an evidentiary hearing is not required, because the record conclusively shows that Green is not entitled to relief as a matter of law. *See Bryan v. United States*, 721 F.2d 572, 577 (6th Cir. 1983) (explaining that an

evidentiary hearing on motion to vacate sentence is not required to resolve purely legal issues). Green's factual allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citations omitted) (internal quotation marks omitted). Green's bald assertions and conclusory allegations thus do not provide sufficient ground to require an evidentiary hearing. *Thomas v. United States*, 849 F.3d 669, 681 (6th Cir. 2017).

### D. Certificate of Appealability

Finally, the Court must consider whether to issue a certificate of appealability (COA) should Green file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c)(1), a petitioner may appeal a final order in a § 2255 case only if he is issued a COA. A COA will be issued only when the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). If a claim has been dismissed on the merits, a petitioner must show that reasonable jurists would find the assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, Green has failed to make a substantial showing of the denial of a constitutional right, as reasonable jurists would not debate the Court's findings as to any of his claims that were addressed on their merits. Since Green has failed to make a substantial showing of the denial of a constitutional right, a COA shall not be issued.

## III. Conclusion

The Court finds that an evidentiary hearing for this § 2255 motion is not necessary. Based on the record before it, the Court concludes that Petitioner Green is not entitled to relief. Therefore, his § 2255 Motion [Doc. 197] is **DENIED** and **DISMISSED WITH PREJUDICE.**

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH
UNITED STATES DISTRICT JUDGE**